## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN PEREZ and** | : | |
| **JENNIFER PEREZ,** | : | **Civil No. 3:12-CV-1322** |
| | : | |
| **Plaintiffs,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **GREAT WOLF LODGE OF** | : | |
| **THE POCONOS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Introduction

At its best, discovery is a process which sheds light on litigation.  Through mutual discovery disclosures, the parties to a lawsuit gain a more complete understanding of their dispute, an understanding which can lead to insight and produce fully-informed decision-making.

The illuminating power of discovery in litigation is promoted when discovery is conducted in a cooperative fashion, marked by timely and transparent disclosures. However, sometimes this process, which is meant to shed light on a dispute, generates greater heat and smoke than light.  And sometimes disputes over discovery, which

should be the means to reach a fair result on the merits of a lawsuit, can supplant that merits consideration in the eyes of the litigants.

So it is in this case, where we are now asked to consider a motion for sanctions which invites the court to completely preclude the defendants from asserting any defense to the plaintiffs' negligence claims based upon a delay in disclosing information which has now been in the plaintiffs' hands for more than a year.  Having carefully considered the parties' positions, we conclude that this extreme sanction would be inappropriate in the instant case, which involved the disclosure, albeit belated disclosure, of relevant evidence by the defense.  Accordingly, for the reasons set forth below, we recommend that this motion for sanctions be denied.

## II.     <u>Statement of Facts and of the Case</u>

This action arises out of an accident at a vacation site in the Poconos.  On December 12, 2010, Mr. Perez was a paying guest and business invitee at the Great Wolf Lodge, and was attempting to ride a water slide at the lodge, the Double Barrel Drop.  As part of this particular ride, Mr. Perez and three other adults entered a raft under the supervision of a lifeguard, Michael Grey, to ride down the slide.  The water slide itself traveled through several funnels as part of the course of this attraction.  As the raft containing Mr. Perez and his companions entered the second funnel of the ride, the raft began oscillating excessively, causing the plaintiff to strike his head and

neck on the interior of the funnel and be ejected, unconscious, from the ride. Perez alleges that he suffered multiple, severe injuries as a result of this accident, and in the course of this litigation has articulated a theory of liability which attributes these injuries to a negligent overloading of the raft. Given this theory of liability the conduct of the supervising lifeguard, Michael Grey, on December 12, 2010, and Great Wolf's policies and practices relating to weight limitations on ride rafts, have both been matters of great relevance to the parties. Over the course of this litigation, discovery on these issues has been occasionally halting and often acrimonious.

This process began in July 2012 when the plaintiffs filed their complaint in this action. (Doc. 1.) Following the filing of this complaint, the parties engaged in frequent discovery disputes, disputes that have included numerous conferences, motions to compel, correspondence and, ultimately, extensive disclosures. (Docs. 16, 17, 18, 20, 29-36, 76.) It also seems clear that this process, which has been consistently contentious, was initially marked by inadequate responses on the defendants' part to the plaintiffs' discovery demands. Thus, there was a failure of discovery by the defendants for much of the first year of this litigation. However, when current defense counsel entered the case in 2013, some significant disclosures, totaling approximately 5,000 pages of material were made between June and October 2013. These disclosures, in turn, led to the filing of a motion to amend the plaintiffs'

complaint to include claim for punitive damages, a motion which remains pending before this court.[1]

Despite these disclosures, questions still remained regarding whether the defendants had completed a comprehensive search of e-mail records.  Those questions were heightened during a deposition of a Great Wolf employee, Mr. McClyman, who had conducted an initial email search of the defendants' email server for responsive records.  This January 2014 deposition revealed flaws in the email search protocol initially used by the defendants, flaws which resulted in far too narrow an email search.  Alerted to this on-going problem, a more expansive search was conducted, and an additional 1,000 pages of material was produced in March of 2014.

Included among these emails which were belatedly disclosed was a December 13, 2010, email from the lifeguard on duty at the time of the December 2010 accident, Michael Grey, to William Colavito, a Great Wolf employee and Great Wolf's corporate designee in this case.  This email, which was disclosed more than a year ago in March 2014, plainly contained statements by Grey concerning the accident,

_____

[1]We will address this motion through a separate Report and Recommendation.

and the failure to adhere to Great Wolf's ride weight limitation policy, matters that are directly relevant to the issues in this case.

It is in the context of this belated disclosure, a disclosure which has been made in the course of extensive discovery disclosures by the defendants, albeit discovery disclosures which were untimely and whose untimeliness could have been avoided, that we are called upon to consider the plaintiffs' motion for sanctions. (Doc. 76.)

In this motion for sanctions, the plaintiffs seek particularly severe and draconian sanctions, arguing that: "the Poulis factors all weigh in favor of imposing severe sanctions that affect the outcome of this litigation in the form of precluding defendants from contesting issues of their negligence, plaintiff's contributory negligence, and causation as well as the striking and dismissal with prejudice of defendants' summary judgment motion." (Doc. 81, p. 25.) In effect, these proposed discovery sanctions would direct a verdict on liability in favor of the plaintiffs in this case. For their part, the defendants oppose this request for outcome-determinative discovery sanctions. This motion is fully briefed by the parties, (Docs. 81, 85, and 93.), and is now ripe for resolution.

For the reasons set forth below, it is recommended that the severe sanction of precluding any defense, a sanction which effectively directs a verdict in favor of the

plaintiffs on liability, is inappropriate in this case where there has been undeniably

tardy, but ultimately fulsome, disclosures to the plaintiffs.

## II. <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery

dispute. At the outset, Rule 37(b) of the Federal Rules of Civil Procedure governs

motions for discovery sanctions, and provides that:

> (2) Sanctions Sought in the District Where the Action Is Pending.

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P., Rule 37(b)(2).

Rulings regarding the proper scope of discovery, and discovery sanctions, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Moreover, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223

F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).[2]

This discretion is guided, however, by certain basic principles. For example, the Federal Rules of Civil Procedure authorize a court to dismiss a civil action, or preclude claims or defenses, as a sanction for discovery abuses. See Fed. R. Civ. P., Rule 37(b)(2)(A)(ii)-(vi). Decisions regarding the imposition of these sanctions, which effectively allow discovery disputes to control the substantive outcome of lawsuits, rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad, is dictated by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the district court abused its discretion [in dismissing a case or entering other outcome-determinative sanctions], we evaluate its balancing of the following factors: (1) the extent of the

---

[2]Given this broad discretion we recognize that this Court could address the merits of this discovery dispute by an opinion and order. However, mindful of the fact that the plaintiff seek an extreme sanction which would effectively direct a verdict in favor of the plaintiffs in this lawsuit, we are treating this motion as outcome determinative, and we have elected to address the motion through a Report and Recommendation.

party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.

Furthermore, when we are presented with a motion for sanctions which, in effect, asks us to direct a verdict for the plaintiffs on the question of liability, we are mindful of the fact that this proposed sanction would determine the outcome of this

litigation.  In such a setting, where we are asked to essentially dismiss any defense to liability, and enter a judgment in the nature of a default judgment on liability issues in this lawsuit, we are reminded that:  "dismissals with prejudice or defaults are drastic sanctions, termed 'extreme' by the Supreme Court, <u>National Hockey League</u>, 427 U.S. at 643, 96 S.Ct. at 2781, and are to be reserved for comparable cases." <u>Poulis v. State Farm Fire & Cas. Co.</u>, 747 F.2d 863, 867-68 (3d Cir. 1984).  Specifically, we note that Rule 37(b) sanctions which compel the outcome of litigation, like the sanctions sought here, are recognized to be "particularly extreme when the sanction is tantamount to dismissing the claim [or defense]." <u>Ware v. Rodale Press, Inc</u>., 322 F.3d 218, 221 (3d Cir. 2003).  Given the extreme nature of these outcome-determinative Rule 37(b) sanctions, they should be reserved solely for the most egregious of cases.

When we apply these principles to the instant case we must balance two competing considerations:  First, in the early stages of this litigation there have undeniably been delinquencies and defaults by the defendants in producing discoverable evidence in a timely manner, defaults that have delayed this litigation and unnecessarily complicated these proceedings.  However, these delinquencies and delays must be weighed against the fact that, between July 2013 and March 2014, the defendants have disclosed some 6,000 pages of materia, including the email

memorandum of Michael Grey which forms the basis for this sanction request. Therefore, unlike typical <u>Poulis</u> requests, this is not a situation in which there has been a complete failure of discovery by a party on a material issues.  Rather, the tardy, but fulsome, disclosures made here now form the foundation for this sanctions motion.  In short, this motion presents an unusual circumstance in which the plaintiffs point to the defendants' voluminous disclosures as grounds for the most severe of discovery sanctions, issue preclusion.

In addition, we note that these discovery disclosures took place more than a year ago, and the plaintiffs have had ample time to make full use of the disclosed materials in preparing their case, thus mitigating the prejudicial impact of this belated discovery disclosure.  We are further constrained to observe that at least some of this delay, which cuts against the plaintiffs in this prejudice analysis, is attributable to choices made by the plaintiffs in this litigation.  For example, when this motion was initially referred to us for our consideration in November 2014, plaintiffs' counsel sought and obtained a stay of proceedings for several months, effectively delaying the resolution of this matter.  (Docs. 115-120.)  Having specifically requested a delay in the resolution of this sanctions motion plaintiff cannot now be heard to complain when the passage of time undermines the need for the most severe of sanctions in this case.

Taking all of these factors into consideration, while we agree that some sanction may be necessary and appropriate in this case, it is recommended that this court refrain from imposing the extreme sanctions sought by the plaintiffs, "of precluding defendants from contesting issues of their negligence, plaintiff's contributory negligence, and causation as well as the striking and dismissal with prejudice of defendants' summary judgment motion." (Doc. 81, p. 25.)

In this case, a dispassionate assessment of the Poulis factors simply does not support a finding that a "particularly extreme [Rule 37(b)] sanction . . . tantamount to dismissing the claim [or defense]," Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003), is warranted here. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, presents a mixed and equivocal picture. The defendants' initial responses to discovery in this case were undeniably inadequate and incomplete. After current counsel entered this case, however, substantial steps were taken to correct these past inadequacies. These efforts have resulted in the production of 6,000 pages of material to the plaintiffs. The plaintiffs plainly regard these disclosures as probative and helpful to them since this material forms the basis for the plaintiffs' motion to amended their complaint to add a claim for punitive damages. Indeed, these disclosures which occurred through March of 2014, also form the basis of the instant motion for sanctions. In our view,

12

in a case like this where extensive discovery disclosures are made, albeit belatedly, it is difficult to attach an outcome determinative significance to any assessment of personal fault or responsibility on the part of a party.

As for the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders– we recognize that this factor is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."  <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id</u>.; <u>see also</u> Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988).  It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe  v. Klaus</u>, 538 F.3d at 259-60.

In this case the defendants' initial discovery failures and shortcoming caused some measure of prejudice to the plaintiffs, in that these failures delayed disclosure of relevant evidence, and contributed to the delays in this litigation.  However, in

light of the extensive disclosures that have been made here between July 2013 and

Match 2014, including disclosures that form the basis for this motion, it cannot be

said that this prejudice rises to the level which warrants a penalty which effects to

outcome of the litigation on its merits.  Such  prejudice typically occurs when a party

experiences harm in the form of  "the irretrievable loss of evidence, the inevitable

dimming of witnesses' memories, or the excessive and possibly irremediable burdens

or costs imposed on the opposing party."  Briscoe  v. Klaus, 538 F.3d at 259-60.

None of these circumstances are present here.  Further, while we concede that this

delay may have caused a further " ' burden . . .  by impeding [plaintiffs'] ability to

prepare effectively a full and complete trial strategy,' Ware, 322 F.3d at 222," Briscoe

v. Klaus, 538 F.3d at 259-60, the prejudicial impact of this delayed disclosure has

been substantially mitigated by the passage of time.  Thus, the plaintiffs have had the

past year to fully integrate the disclosed evidence into their trial strategy, a period of

trial preparation time which seems sufficient to substantially reduce the prejudice

caused by the delay in producing these emails.

The third Poulis factor-the history of dilatoriness on the plaintiff's part–also

presents a mixed and equivocal picture in this case.  In this regard, it is clear that

"'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness,

such as consistent non-response . . . , or consistent tardiness in complying with court

orders' <u>Adams,</u> 29 F.3d at 874," <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted), and may describe the type of culpably dilatory conduct that warrants imposition of severe sanctions.  While we believe that the conduct of the defendants at the outset of this litigation, from July 2012, through March 2013, might be characterized as extensively dilatory, subsequent events have largely remedied this failing on the part of the defense.  Specifically, between June 2013 and March 2014, the defendants and their current counsel have made substantial strides to compensate for these earlier shortcomings, and have disclosed some 6,000 pages of material to the plaintiffs, material which the plaintiffs assert substantially strengthens their case, and has inspired a motion to amend this complaint to include a claim for punitive damages.  Given these recent, and significant, disclosures we cannot say that there has been an extensive history of dilatoriness which has permeated the entire history of this litigation.

The fourth <u>Poulis</u> factor considers whether the conduct of the party or the attorney was willful or in bad faith.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994).  Here, when we consider the conduct of current counsel, who entered an appearance in this

15

case in 2013 and then oversaw the disclosure of 6,000 pages of discovery to the plaintiffs, we find no culpable willfulness. [3]

In making this sanctions determination, Poulis also enjoins us to consider a fifth factor, the effectiveness of other lesser sanctions rather than complete preclusion of a defense or claim. Here, it is readily apparent that other lesser sanctions are available to the court. For example, the court may shift costs of discovery, and require the defendants to reimburse plaintiffs for the costs of this discovery litigation. In addition, recognizing that this belated discovery also led to the plaintiffs' motion to amend their complaint to include claims for punitive damages based upon evidence that was disclosed in a tardy fashion, the court could also consider granting this motion to amend, in part as a sanction for the delay in discovery, while allowing the

_____

[3]We limit our willfulness analysis to the conduct of current counsel and have no occasion to consider what preceded entry of current counsel's appearance in this litigation since that conduct which took place between July 2012 and Spring of 2013, is too temporally remote in our view to support an outcome determinative sanction in this litigation. It must be noted, however, that it is very difficult to characterize the conduct of the defendants here, which was first marked by indolence and later defined by extensive disclosures, as "strategic," or "intentional or self-serving behavior." Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). In particular, we are hard pressed to divine some strategic purpose that is served by failing to make timely disclosures, and then parading that failure before the court in a series of much more complete, but tardy, disclosures. In short, the candor later exhibited by the defendants strongly suggests that there was no strategic element to their earlier failure to disclose this information.

defendants to preserve their right to challenge this claim for punitive damages on its merits either through a motion for summary judgment, or at trial. All of these measures are lesser sanctions, which may more aptly fit as penalties for the defendants' delinquencies, but which do not impose a "particularly extreme [Rule 37(b)] sanction . . . tantamount to dismissing the claim [or defense]," Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003).

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the party's claims or defenses. This issue is currently before the court on the defendants' motion for summary judgment, and it would be inappropriate to litigate the entire merits of this case in the context of this sanctions motion. Suffice it to say, however, that the merits of the plaintiffs' claims and the defendants' defenses to those claims, have been, are, and will be hotly litigated by these parties. Furthermore, it is also well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222," Briscoe v. Klaus, 538 F.3d at 263 when making a Poulis assessment. Therefore, this final factor, standing alone, would not necessarily alter the outcome of this sanctions motion.

In any event, in this case we have found that first five Poulis factors do not clearly support a finding that the defendants should now be barred from contesting liability. Recognizing that these other Poulis factors do not compel the severe

17

sanction of an order "precluding defendants from contesting issues of their negligence, plaintiff's contributory negligence, and causation as well as the striking and dismissal with prejudice of defendants' summary judgment motion," (Doc. 81, p. 25.), we conclude that the contested merits of these claims and defenses, which are closely disputed by the parties, also do not on their own compel the imposition of severe sanctions in the form of an order precluding a defense to these claims. Quite the contrary, acknowledging these conflicting views on the merits of the plaintiffs' claims and mindful of the fact that cases should be resolved on their merits whenever possible, we should strive to allow the merits of this case to be fully heard and considered.

## IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiffs' motion for sanctions, (Doc. 76.),which seeks sanctions in the form of an order "precluding defendants from contesting issues of their negligence, plaintiff's contributory negligence, and causation as well as the striking and dismissal with prejudice of defendants' summary judgment motion," (Doc. 81, p. 25.), should be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th  day of June 2015.

                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge