IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN PEREZ and** | : | |
| **JENNIFER PEREZ,** | : | **Civil No. 3:12-CV-1322** |
| | : | |
| **Plaintiffs,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **GREAT WOLF LODGE OF** | : | |
| **THE POCONOS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Introduction

This personal injury tort case now comes before us for consideration of a motion to amend the complaint filed by the plaintiffs.  (Doc. 37.)  This motion to amend seeks leave of court to submit an amended complaint which would add a claim for punitive damages, and a series of factual averments in support of this punitive damage claim, to this litigation.  Recognizing that leave to amend should be freely given under Rule 15, and acknowledging that our assessment of the futility of any proposed amended complaint is limited to an evaluation of the pleading itself, for the reasons set forth below, it is recommended that this motion to amend be granted.

Since the amended complaint also significantly alters the legal and factual terrain in this litigation, if this motion to amend is granted it is further recommended that the defendants should be ordered to withdraw and re-file their motion for summary judgment, (Doc. 66.), so that motion may fully address the new claims and factual averments set forth in the amended complaint.

## II.    Statement of Facts and of the Case

This action arises out of an accident at a vacation site in the Poconos.  On December 12, 2010, the plaintiff, Brian Perez, was a paying guest and business invitee at the Great Wolf Lodge, and was attempting to ride a water slide at the lodge, the Double Barrel Drop.  As part of this particular ride, Mr. Perez and three other adults entered a raft under the supervision of a lifeguard, Michael Grey, to ride down the slide.  The water slide itself traveled through several funnels as part of the course of this attraction.  As the raft containing Mr. Perez and his companions entered the second funnel of the ride, the raft began oscillating excessively, causing the plaintiff to strike his head and neck on the interior of the funnel and be ejected, unconscious, from the ride.  Perez alleges that he suffered multiple, severe injuries as a result of this accident, and in the course of this litigation has articulated a theory of liability which attributes these injuries to a negligent overloading of the raft.  Given this theory of liability the conduct of the supervising lifeguard, Michael Grey, on

December 12, 2010, and Great Wolf's policies and practices relating to weight limitations on ride rafts, have both been matters of great relevance to the parties. Over the course of this litigation, discovery on these issues has been occasionally halting and often acrimonious, a process which has contributed to the filing of this motion to amend more than one year after this lawsuit commenced.

This process began in July 2012 when the plaintiffs filed their complaint in this action.  (Doc. 1.)  Following the filing of this complaint, the parties engaged in frequent discovery disputes, disputes that have included numerous conferences, motions to compel, correspondence and, ultimately, extensive disclosures.  (Docs. 16, 17, 18, 20, 29-36, 76.)  It also seems clear that this process, which has been consistently contentious, was initially marked by inadequate responses on the defendants' part to the plaintiffs' discovery demands.  Thus, there was a failure of discovery by the defendants for much of the first year of this litigation.  However, when current defense counsel entered the case in 2013, some significant disclosures, totaling approximately 5,000 pages of material were made between June and October 2013.

These disclosures, in turn, led to the filing of the instant motion to amend the plaintiffs' complaint.  (Doc. 37.)  In this motion to amend the plaintiffs seek to file an amended complaint which would add a claim for punitive damages to this lawsuit.

In addition to changing the legal terrain in this litigation in this fashion, the amended complaint also purports to add a series of factual averments, allegations designed to support the plaintiffs' claim for punitive damages. These factual assertions, as detailed in the plaintiffs' proposed amended complaint, (Doc. 37-4.), include allegations that after this ride was put into operation on March 28, 2010, safety changes were made within two weeks in the way the ride was operated and the maximum weight limit for the ride was changed from 700 pounds to 600 pounds. (Id.) Despite this weight change, the attraction signage was allegedly never changed to reflect this reduced maximum weight prior to Perez's injuries. (Id.) Furthermore, despite this weight change, it is asserted defendants continued to teach and train their lifeguards that 700 pounds was the maximum weight restriction, and did not advise or effectively enforce a 600 pound weight restriction with guests or their own staff. (Id.)

Further, plaintiffs allege in this amended complaint that in July 2010, defendants made another safety change to the ride, advising that although 4 riders were allowed on the ride rafts, there could be no more than 2 adult riders allowed on a raft at any one time. When the 2 adult riders change was made in July 2010, according to the plaintiffs, the defendants provided each lifeguard with a document to sign that stated that the cloverleaf quad tube could have 2, 3 or 4 riders but was

4

restricted to only 2 adult riders at one time.  (Id.)  In addition, the amended complaint

asserts that prior to Mr. Perez's injury, in mid-November 2010, the defendants

circulated a Weight Restriction memo for each lifeguard/attendant to sign stating the

ride had restrictions of 600 pounds for the quad tube and 500 pounds for the whirly

circular tube and that "when Guests exceed the weight on an attraction it can cause

serious injury."  (Id.)  However, prior to the December 12, 2010, incident in which

Mr. Perez was injured, it is alleged that the attraction signage was never changed to

notify guests that only 2 adult riders were allowed on the quad tube.  (Id.)  Instead,

the sign continued to read Maximum Weight:  2,3, or 4 riders:  700 pounds. (Id.)

The plaintiffs' proposed amended complaint further alleges that from the time

the ride opened in March 2010 until Mr. Perez's incident on December 12, 2010, the

defendants had numerous documented incidents causing injury, including multiple

head injuries prior to plaintiff's incident and the defendants were "tracking" injuries

on their rides.  (Id.)  Further,  at or around the time of Perez's injury, it is alleged that

the defendants had internal discussions about the necessity of implementing improved

safety measures on this ride, establishing the defendants' knowledge of the need to

take additional safety measures, but the defendants failed to implement any of these

safety changes prior to Mr. Perez's accident and injuries.  (Id.)  According to Perez,

these proposed safety measures included:  (1) installing a camera within the ride to

determine how people were hitting their heads; (2) improved signage regarding weight and the number of adult riders permitted on the ride; (3) improving the "spiel" the lifeguards/attendants were provided to guests to ensure it included a question to the guests about whether they met the maximum weight of riders; (4) installing scales at top of the ride which would light up either red or green depending on the combined weight of the riders to ensure the guests did not exceed the weight limit and (5) reinforcing lifeguard/attendant knowledge of weight and adult rider restrictions for this ride.  (Id.)

For their part, the defendants have stridently opposed the plaintiffs' motion to amend this complaint, advancing both legal and essentially factual arguments in opposition to this request to amend the pleadings.  At the outset, the defendants contend that the motion to amend should be denied because the evidence will show that the plaintiffs have misconstrued the facts, as reflected in defendants' belated discovery disclosures, and the facts as alleged in the amended complaint ultimately will not comport with the facts, as shown by discovery and at trial.  This argument, of course, is more akin to the type of claim made by a party in a summary judgment motion than the form of argument that is typically advanced in opposition to a motion to amend, where we are called upon to simply assess the adequacy of the pleadings, and not the sufficiency of the proof.  In addition to these fact-bound claims, the

defendants advance legal arguments opposing the amendment of this complaint, asserting that the facts alleged by the plaintiffs, even if proven, would not meet the threshold prescribed for punitive damages under Pennsylvania law.

This motion is fully briefed by the parties and is now ripe for resolution. For the reasons set forth below, it is recommended that the plaintiff's motion to amend, (Doc. 37.),be granted, and further proceedings be conducted on the basis of the amended complaint. Recognizing that the amended complaint also significantly alters the legal and factual terrain in this litigation, if this motion to amend is granted, it is further recommended that the defendants should be ordered to withdraw and re-file their motion for summary judgment, (Doc. 66.), so that motion may fully address the new claims and factual averments set forth in the amended complaint.

## II.    Discussion

### A.    Motion to Amend–Standard of Review

Rule 15 of the Federal Rules of Civil Procedure governs amendment and supplementation of pleadings. Fed. R. Civ. P., Rule 15. Rule 15(a) authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A) and (B). "In all other cases, a

party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Consistent with the plain language of this rule, leave to amend rests in the discretion of the court.  That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15.  In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party.  Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend.  Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)).  Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court.  Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

Finally, in every instance, the exercise of this discretion must be guided by the animating principle behind Rule 15, which is "to make pleadings a means to achieve an orderly and fair administration of justice." Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964). Therefore, in considering a motion to amend we must always "appl[y] Rule 15 . . . in a manner aimed at securing the just, speedy and inexpensive determination of every action." CMR D.N. Corp. v. City Of Philadelphia, No. 07-1045, 2011 WL 857294, *4 (E.D.Pa. March 11,2011)(Stengel, J.).

Having defined futility for purposes of amendment of pleadings by stating that:

" 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Burlington, 114 F.3d at 1434," Shane v. Fauver,  213 F.3d 113, 115 (3d Cir. 2000), Rule 15 incorporates the legal standards set by Rule 12(b)(6) for assessing the sufficiency of complaints.  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that

they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions.  Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to  show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set

forth the 'plausibility' standard for overcoming a motion to dismiss and refined this

approach in <u>Iqbal</u>.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id</u>. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id</u>." <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.").  However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted.  Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B.   Punitive Damages Under Pennsylvania Law

This tort case comes before us pursuant to our diversity jurisdiction.  As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute when assessing whether the plaintiff's amended complaint states a plausible claim for punitive damages.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000).  Under Pennsylvania law, in order to establish a cause of action for negligence, a plaintiff must prove the following elements:  (1) a duty or obligation to the plaintiff recognized by law; (2) a breach of that duty to the plaintiff; (3) a causal connection between the conduct and plaintiff's resulting injury; and (4) actual damages suffered by the plaintiff.  Pittsburgh Nat'l Bank v. Perr, 637 A.2d 334, 336 (Pa. Super. Ct. 1994).

Pennsylvania law also sets an exacting standard for the award of punitive damages in tort cases.  "Pennsylvania has adopted Section 908 of the Restatement (Second) of Torts, which provides that punitive damages may be 'awarded to punish a defendant for outrageous conduct, which is defined as an act which, in addition to creating "actual damages, also imports insult or outrage, and is committed with a view to oppress or is done in contempt of plaintiffs' rights."  ...  Both intent and reckless indifference will constitute a sufficient mental state.'  Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 235 (3d Cir.1997)(quoting Delahanty v. First Pa.

Bank, N.A., 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983))" W.V. Realty, Inc. v. N.

Ins. Co., 334 F.3d 306, 318 (3d Cir. 2003).

>As the Pennsylvania Supreme Court has observed:
>
>The standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979)); see also Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. See SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (1991); Feld, 485 A.2d at 747-48; Chambers, 192 A.2d at 358. See also Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908 (1) ( "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). Additionally, this court has stressed that, when assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." See Feld, 485 A.2d at 748; see also Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).

Hutchison ex rel. Hutchison v. Luddy, 582 Pa. 114, 121 22, 870 A.2d 766, 770-71

(2005).

In <u>Hutchinson</u> the Pennsylvania Supreme Court also:

[S]et forth the standard the courts are to apply when called upon to determine whether the evidence supports a punitive damages award on such a basis.   Noting that Comment b to Section 908(2) of the Restatement refers to Section 500 as defining the requisite state of mind for punitive damages based on reckless indifference, this court turned to Section 500, which states:

§ 500 Reckless Disregard of Safety Defined

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500.

<u>Id</u>. At 771.

Noting that Section 500 set forth two very different types of state of mind as to reckless indifference, the Pennsylvania Supreme Court adopted the narrower reading of this state of mind requirement when addressing punitive damage claims, concluding that "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk."   <u>Hutchison ex rel. Hutchison v. Luddy</u>, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005).

It is against this legal backdrop that we are called upon to assess whether the amendment to this complaint proposed by the plaintiffs, which would add a claim for punitive damages to this lawsuit, is a futile exercise.

### C.   The Plaintiffs Should Be Granted Leave to Amend Their Complaint

Recognizing that leave to amend a complaint should be freely give "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is recommended that the plaintiffs be given leave to amend their complaint in this case to include both a claim for punitive damages and the factual averments that the plaintiffs make in support of that punitive damages claim.   In reaching this conclusion, we note that the defendants have advanced a twofold argument in opposition to this motion for leave to amend.   First, the defendants argue that the plaintiffs' allegations are factually unsupported and inaccurate, and stem from a misreading of the discovery materials that were belatedly disclosed by the defense in this case.

At the outset, as defendants implicitly acknowledge in their pleadings, there is a somewhat unappealing aspect to this factual argument, which suggests that the plaintiffs' hurried misreading of the evidence they received warrants denying this motion for leave to amend.   What makes this assertion intuitively unappealing is the fact that the plaintiffs' reading of this evidence was hurried because the defendants had delayed for months in disclosing this information, a delay which inspired a

motion for sanctions by the plaintiffs.  Indeed, as we have recently observed when addressing the plaintiffs' motion for sanctions, the delayed disclosure of this evidence by the defendants may well justify denying their opposition to this motion for leave to amend since  the court could consider granting this motion to amend, in part as a sanction for the delay in discovery, while allowing the defendants to preserve their right to challenge this claim for punitive damages on its merits either through a motion for summary judgment, or at trial.  (Doc. 134, pp. 16-17.)

In any event, to the extent that the defendants urge us to deny the plaintiffs' motion for leave to amend based upon an argument which looks beyond the pleadings, and invites a factual assessment of the underlying merits, we should decline this invitation.   While it is well-settled that the liberal rules favoring amendment of pleadings are subject to a futility exception, in this context: "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Burlington, 114 F.3d at 1434." Shane v. Fauver,  213 F.3d 113, 115 (3d Cir. 2000).  Therefore, Rule 15's futility exception incorporates the legal standards set by Rule 12(b)(6) for assessing the sufficiency of complaints, which examines whether the pleadings fail to state a claim upon which relief may be granted.

In making this assessment of the legal sufficiency of a complaint, the scope of our review is narrowed cabined and confined.  We generally rely on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.").  However, the court may not rely on other parts of the record in determining whether an amended complaint fails to state a claim upon which relief may be granted.  Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Therefore, to the extent that the defendants invite us to foray beyond an assessment of the legal sufficiency of this proposed amended complaint and indulge in a factual weighing of

the adequacy of the evidence, we should decline this request. Rather, at this juncture we must simply examine the proposed amended complaint and determine whether the well-pleaded facts set forth in that pleading state a plausible claim for punitive damages under Pennsylvania law.[1]

With our task defined in this fashion, we conclude that the proposed amended complaint adequately states a claim for punitive damages, and, therefore, the plaintiffs should be permitted to amend their pleadings to include this claim. Pennsylvania law sets a high and exacting standard for the award of punitive damages. "[I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Hutchison ex rel. Hutchison v. Luddy, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005). While this is a precise burden of pleading and proof, the well-pleaded facts set forth in the proposed

---

[1]We also note that the defendants argue that the plaintiffs' proposed amended complaint may attempt to improperly incorporate subsequent repairs in their cause of action, in violation of Rule 407 of the Federal Rules of Evidence. This issue cannot be resolved on the pleadings themselves, and does not in our estimation provide grounds for denial of leave to amend. Instead, to the extent that the plaintiffs may seek to incorporate evidence that is barred by Rule 407 in their case, the defendants should move to limit, restrict or deny such proof. The defendants are not entitled, however, to deny plaintiffs' leave to amend their complaint entirely on this ground.

amended complaint plausibly state a claim for punitive damages under Pennsylvania law since, fairly construed, this amended complaint alleges that the defendants were subjectively aware of a heightened danger to safety created by overloading this amusement ride beyond its prescribed weight limits but failed to act in a timely manner upon what was known by them to be a risk to the safety of riders.  If these facts are proven, and fully credited, at trial then the plaintiffs may be entitled to punitive damages.  Since our reading of the well-pleaded facts in the amended complaint could plausibly support a claim for punitive damages, this amendment would not be futile, and leave to amend should be granted.  As this court has previously observed when considering the availability of punitive damages in another case: "there is a possibility that plaintiff may be able to establish these claims at trial. If he does, punitive damages may be available, so it is pre-mature for the court to release defendants from liability on this issue."   Roach v. Marrow, No. 3:08·CV·1136, 2012 WL 1059741, at *9 (M.D. Pa. Mar. 28, 2012)(Mariani, J.)

> **D.**   **If Leave to Amend is Granted, the Defendants Should Be Instructed to Withdraw and Re-file Their Motion for Summary Judgment in Order to Fully Address the New Legal Claims and Factual Averments Set Forth in the Amended Complaint**

Finally, if the plaintiffs are granted leave to amend their complaint, we note that this amendment fundamentally changes the legal terrain in this case in ways

which affect the viability of the pending motion for summary judgment (Doc. 66.) filed by the defendants, a motion which challenged the sufficiency of the claims set forth in the plaintiffs' original complaint.  We believe that this development has substantive significance for the parties with respect to this motion for summary judgment filed in this case since, as a matter of law, an amended complaint takes the place of the original complaint, effectively invalidating the original complaint. Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect"); see 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended … supersedes the pleading it modifies…. Once an amended pleading is interposed, the original pleading no longer performs any function in the case….").

Since the complaint in this case will have been amended, the original complaint would now be a nullity, the summary judgment arguments made by the defendants with respect to the original complaint would need to be reassessed in light of the new, and different, claims set forth in the amended complaint.  At a minimum, it would be necessary for the defendants to address the new claims for punitive damages in their summary judgment motion.  Furthermore, the allegations in the amended complaint

23

that the defendants had failed to disclose and warn customers of an inherent danger arising out of overloading rafts beyond their prescribed weight limits, and the claims in the amended complaint that signage at the park misstated these dangers, could have a material impact upon the defendants' claims that riders at the park assumed the risk of injury, a principal defense currently advanced in this summary judgment motion.

In order to allow for the fully-informed consideration of these legal questions, it is further recommended that, if leave to amend this complaint is granted, then the defendants should be instructed to withdraw, and re-file their motion for summary judgment, so that motion may fully address the new claims and factual averments set forth in the amended complaint.

Finally, we note one other consideration which informs these recommendations.  The past course of this litigation illustrates an instance in which disputes over discovery have generated greater heat and smoke than light.  The distorting effect of these discovery disputes can be seen throughout this litigation. It has engendered acrimony between the parties, led to sanctions litigation, delayed the filing and resolution of this motion to amend, and undermined the ability of the parties to squarely address the legal merits of this case through a fully developed motion for summary judgment.  While the past course of this litigation cannot be undone, the recommendations which we make today on these motions, and our prior

recommendation on the plaintiffs' motion for sanctions, (Doc. 134.), would enable all parties to proceed forward in this litigation with their past discovery disputes resolved, their pleadings updated to reflect the current evidence, and the legal merits of their case presented on a clear factual record, containing all of the claims and defenses of the parties.

### IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiffs' motion to amend this complaint, (Doc. 37.) be GRANTED, and that further proceedings be based upon the plaintiffs' amended complaint. (Doc. 37-4.) IT IS FURTHER RECOMMENDED that, since as a matter of law this amended complaint takes the place of the original complaint, effectively invalidating the original complaint, <u>Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.)</u>, 226 F.3d 160, 162 (2d Cir. 2000) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect"), if this motion for leave to amend is granted, the defendants should be ordered to withdraw and re-file their motion for summary judgment, (Doc. 66.), so that the motion may fully address the new claims and factual averments set forth in the amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th  day of June 2015.


                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge