Lenahan & Dempsey, P.C.
By: John R. Lenahan, Jr., Esquire
I.D. No. 22690                                                    Attorneys for Plaintiffs
116 North Washington Avenue
Lenahan & Dempsey Professional Building
Suite 400
P.O. Box 234
Scranton, Pennsylvania 18501-0234
(570) 346-2097 Telephone
(570) 346-1174 Facsimile
_____

## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Brian Perez and Jennifer Perez**, his wife, | : | |
| | : | |
| Plaintiffs | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | |
| | : | |
| **Great Wolf Lodge of the Poconos, LLC** | : | |
| | : | |
| and | : | JURY TRIAL |
| | : | DEMANDED |
| **Great Wolf Resorts, Inc.** | : | |
| | : | NO.: 3:12-cv-1322 |
| Defendants | : | |

## PLAINTIFFS' AMENDED COMPLAINT

NOW COME Plaintiffs, Brian and Jennifer Perez, by and through their attorneys, Lenahan & Dempsey, P.C., by John R. Lenahan, Jr., Esquire, and set forth the following:

1

## THE PARTIES

1.      Plaintiff Brian Perez (hereinafter referred to as "Plaintiff") is an adult, competent individual residing at 19 Ridgefield Road, Warwick, New York, 10990 and is a citizen of New York.

2.      Plaintiff Jennifer Perez (hereinafter referred to as "Plaintiff Wife") is an adult, competent individual also residing at 19 Ridgefield Road, Warwick, New York, 10990 and is a citizen of New York.

3.      At all times pertinent hereto, Brian Perez and Jennifer Perez resided together as husband and wife.

4.      Defendant Great Wolf Lodge of the Poconos, LLC, upon information and belief, is a limited liability company organized and existing under the laws of Delaware and has its principal place of business located at 1 Great Wolf Drive, Scotrun, PA 18355.

5.      Defendant Great Wolf Resorts, Inc., upon information and belief, is a corporation organized and existing under the laws of Delaware and has its principal place of business located at 525 Junction Road, Suite 6000, South Tower, Madison, WI 53717.

6.      Defendants, Great Wolf Lodge of the Poconos, LLC and Great Wolf Resorts, Inc. are hereinafter collectively referred to as "Defendants."

**JURISDICTION/VENUE**

7.    The jurisdiction of this Court is invoked to 28 U.S.C. § 1332, Diversity of Citizenship, as Plaintiffs, at all times material to this Complaint, have resided in and were and are citizens of New York, and all of Defendants are citizens of and have principal places of business in a state other than New York. Specifically, Defendant, Great Wolf Lodge of the Poconos, LLC, is a citizen of Delaware and/or Pennsylvania and/or Wisconsin and Defendant, Great Wolf Resorts, Inc., is a citizen of Delaware and Wisconsin.

8.   Also, pursuant to 28 U.S.C. § 1332, the amount in controversy herein is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs, as required for diversity jurisdiction.

9.   The instant cause of action accrued within the Middle District of Pennsylvania and accordingly, venue over this cause of action properly lies within the District Court for the Middle District of Pennsylvania.

**THE DECEMBER 12, 2010 INCIDENT**

10.    At all times pertinent hereto, Defendants owned, operated, controlled and maintained an amusement resort/indoor water park located

at 1 Great Wolf Drive, Scotrun, PA 18355 which is commonly known as "Great Wolf Lodge."

11.    On or about December 12, 2010, Plaintiff was at all times pertinent hereto a paying guest and business invitee of Defendants at the aforesaid Great Wolf Lodge.

12.    During the evening on December 12, 2010, Plaintiff, while lawfully present at Great Wolf Lodge, attempted to ride the Double Barrel Drop waterslide which, at all times pertinent hereto, was owned, maintained, controlled, operated and supervised by Defendants.

13.    At all times pertinent hereto, the subject Double Barrel Drop waterslide was owned, maintained, controlled, operated and supervised by Defendants individually and/or through their agents, servants, workers and employees.

14.    Upon information and belief, as Plaintiff approached the area where guests/riders would get onto a raft-like conveyance ("raft") to ride on the Double Barrel Drop, the lifeguard/attendant, an agent, servant, worker or employee of Defendants, did not give a "spiel" and/or instructions regarding any weight or adult rider restrictions to Plaintiff.

4

15.    Not only did the lifeguard/attendant not give any "spiel" or instructions, but he actively assisted Plaintiff and three other adult riders onto the raft and proceeded to dispatch them onto the Double Barrel Drop ride.

16.    As Plaintiff was riding the Double Barrel Drop waterslide in a raft-like conveyance ("raft") with three other riders Plaintiff was, suddenly and without warning, ejected from the raft causing him to sustain the serious, permanent and disabling injuries set forth hereinafter.

17.    As a direct and proximate result of the negligent and careless conduct of Defendants as will be set forth in further detail below, Plaintiff suffered serious, permanent and disabling injuries and damages including, but not limited to, the following:

a.    Injuries to the cervical spine;

b.    Injuries to the right shoulder;

c.    Injuries to the left shoulder;

d.    Injuries to the head;

e.    Injuries to the face;

f.    Injuries to the legs;

g.    Injuries to the mid and low back;

h.     Cervical sprain/strain;

i.     Spinal cord injury;

j.     Aggravation of degenerative disc and joint disease of the cervical spine;

k.     Neuropathic pain and dysesthesias and diffuse nerve injuries;

l.     Compression deformities of the cervical spine at C3 and C4;

m.     C3 and C4 nerve root injuries;

n.     Extension injury to the cervical spine;

o.     Central disc herniations;

p.     Status post C-4 posterior surgical laminectomy with C3-C5 fusion including insertion of titanium rods and multiple screws;

q.     Cervical spinal cord edema;

r.     Paralysis;

s.     Head injury with loss of consciousness;

t.     Concussion;

u.     Post-concussion syndrome;

v.     Traumatic brain injury;

w.     Multiple lacerations to the face and head;

x.     Gait dysfunction;

y.     Fractured and chipped teeth;

z.  Permanent scarring and disfigurement;

aa.  Sexual dysfunction;

bb.  Elevated blood pressure;

cc.  Multiple cuts, bruises, contusions and abrasions throughout the body;

dd.  Memory loss;

ee.  Sleep disturbance;

ff.  Chronic pain syndrome;

gg.  Chronic headaches;

hh.  Depression;

ii.  Severe emotional/psychic trauma;

jj.  Diffuse traumatic injuries to the joints, bones, muscles, fibers and nerves of the body;

kk.  Any and all other injuries revealed through discovery and/or contained in the medical records and reports.

18.  Each of the aforementioned injuries and medical conditions suffered by Plaintiff has caused and will cause for an indefinite time into the future great pain, agony and suffering, both physical and mental, and disability.

19.  As a result of the aforementioned incident and resulting injuries, Plaintiff has been and will forever in the future be forced to expend

various and substantial sums of money for medicine and medical attention in the treatment of his injuries, all to his great financial loss and detriment.

20.    As a result of the aforementioned incident and resulting injuries, Plaintiff has suffered severe and permanent personal injuries and damages for which he is entitled to the full extent of compensation for such injuries and damages provided by law.

21.    As a result of the aforementioned incident and resulting injuries, Plaintiff has been and will continue to be unable to go about his daily occupations and routines for an undetermined amount of time into the future.

22.    As a result of the aforementioned incident and resulting injuries, Plaintiff has and will incur financial expenses for losses which do or may exceed amounts which he may be otherwise entitled to recover.

23.    As a result of the aforementioned incident and resulting injuries, Plaintiff has suffered physical pain and suffering, mental anguish, humiliation, emotional distress, discomfort, disfigurement, inconvenience and loss of ability to perform and enjoy the activities and pleasures of life, (including household services and activities of daily living), all of which will be permanent in nature and will continue indefinitely into the future.

24.    As a result of the aforementioned incident and resulting injuries, Plaintiff has sustained a past, present and future loss of earnings as well as a loss of his past, present and future earning capacity.

25.    As a result of the aforementioned incident and resulting injuries, Plaintiff has sustained a loss of ability to engage in his daily activities.

26.    As a result of the aforementioned incident and resulting injuries, Plaintiff has experienced the following damages, losses and disabilities, consisting of, but not limited to, the following:

a.    past, present and future pain and suffering;

b.    past, present and future emotional distress and mental anguish;

c.    past, present and future medical expenses;

d.    past, present and future disfigurement and scarring;

e.    past, present and future loss of life's pleasures;

f.    past, present and future loss of earnings and earning capacity.

27.    Each of the aforementioned injuries and resulting damages is the direct and proximate result of the negligence and carelessness of Defendants as described more fully below.

28.    At all times pertinent hereto, Plaintiff exercised due care and in no way contributed to the happening of this incident.

29.    Plaintiff is entitled to recover the full extent of damages allowed by law, including money damages, from Defendants for the injuries and damages he sustained on December 12, 2010 as described herein previously.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants for an amount in excess of $75,000.00 for compensatory and punitive damages in addition to interest, costs, delay damages and any such other relief as this Honorable Court deems just and proper.

## COUNT I

## BRIAN PEREZ

## VS.

## GREAT WOLF LODGE OF THE POCONOS, LLC

## AND

## GREAT WOLF RESORTS, INC.

30.    Plaintiffs hereby incorporate all of the preceding paragraphs as if the same were set forth at length herein.

31.    At all times pertinent hereto, Defendants owned, maintained, controlled, operated and supervised Great Wolf Lodge and were

responsible for all safety concerns and safety matters as they related to their guests and business invitees.

32.    At all times pertinent hereto, Defendants owned, maintained, controlled, operated and supervised the water rides and amusement facilities at Great Wolf Lodge including the ownership/maintenance/control/operation/supervision of the Double Barrel Drop waterslide, the specific waterslide ride on which Plaintiff was injured on December 12, 2010.

33.    At all times pertinent hereto, Defendants acted individually and/or through their agents, servants, workers and employees for whom Defendants are, at all times pertinent, vicariously liable.

34.    At all times pertinent hereto, Defendants were responsible for the training, supervision and oversight of their agents, servants, workers and employees, including those agents, servants, workers and employees who were involved in and engaged in the use, supervision, control and operation of the Double Barrel Drop waterslide.

35.    At all times pertinent hereto, Defendants were responsible for the safety of the Double Barrel Drop waterslide and for the safety of their

guests and business invitees who used, participated in or rode on the said Double Barrel Drop waterslide.

36.   At all times pertinent hereto, Defendants were responsible to ensure that their agents, servants, workers and employees who were involved in and engaged in the use, supervision, control and operation of the Double Barrel Drop waterslide were fully trained and fully experienced in the safe and proper use, supervision, control and operation of the waterslide so that Great Wolf guests and business invitees could use the said waterslide in safety.

37.   Prior to the injury-causing incident to Plaintiff on December 12, 2010, Defendants knew and had reason to know that injury-causing incidents including ones with multiple head injuries were occurring on the Double Barrel Drop waterslide since its inception in March 2010.

38.   Prior to the injury-causing incident to Plaintiff on December 12, 2010, Defendants knew or had reason to know of the following relative to the Double Barrel Drop ("DBD") waterslide:

a) After the DBD was put into operation on March 28, 2010, drastic safety changes were made shortly in the way the ride was operated – to wit, the maximum weight was changed from 700 lbs. to 600 lbs;

b) Despite this weight change, the DBD signage was never changed to reflect this reduced maximum weight before Plaintiffs' December 12, 2010 incident – to wit, the sign continued to read Maximum Weight: 2,3, or 4 riders: 700 lbs; thus, the riders, including Plaintiff, were never alerted to the change in weight;

c) Despite this weight change, Defendants continued to teach and train their lifeguard/attendants that 700 lbs. was the maximum weight restriction, including right before Plaintiff's incident;

d) Defendants did not advise or effectively enforce the 600 lbs. weight restriction with guests or even their own staff;

e) Before Plaintiff Brian Perez was injured, in and around July 2010, Defendants made another drastic safety change to the ride, advising that although 4 riders were allowed, there would be no more than 2 adult riders allowed at any one time;

f) When the 2 adult riders change was made in and around July 2010, Defendants provided each lifeguard/attendant a document to sign that stated that the cloverleaf quad tube could have 2, 3 or 4 riders but was restricted to only 2 adult riders at one time;

g) Before Plaintiff was injured, in mid-November 2010, Defendants circulated a Weight Restriction memo for each lifeguard/attendant to sign stating the DBD had restrictions of 600 lbs. for the quad tube and 500 lbs. for the whirly circular tube and that "when Guests exceed the weight on an attraction it can cause serious injury";

h) The "Weight Restriction" document has not been produced for the lifeguard/attendant on duty at the time Plaintiff was injured – establishing that Defendants, despite their knowledge of the importance of enforcing the weight requirement, recklessly failed to do so with regard to the lifeguard on duty and ensure he was properly instructed;

i) The lifeguard/attendant for the DBD had the responsibility/duty to enforce the requirements of a 600 lbs. weight restriction and a maximum of 2 adult riders – this was not optional;

j) Before the December 12, 2010 incident, the DBD sign was never changed to notify guests that only 2 adult riders were allowed on the quad tube – to wit, the sign continued to read Maximum Weight: 2,3, or 4 riders: 700 lbs;

14

k) From the time the ride opened in March 2010 until Mr. Perez's incident on December 12, 2010 (a period of approximately 9 months), Defendants had at least 37 documented incidents causing injury, including multiple head injuries prior to Plaintiff's incident;

l) Defendants were "tracking" injuries on their rides;

m) The series of drastic changes made in the nine (9) month period the ride was in operation from March 2010 until December 2010 were based on incidents of injury – i.e. once a guest was injured, Defendants made "reactive" safety changes in response to that injury rather than proactively insuring the safety of the DBD ride and guests;

n) In or around the time Plaintiff was hurt, Defendants had internal discussions/communications about the following safety measures/considerations on the DBD ride, establishing Defendants' knowledge of the need to take additional safety measures, but Defendants failed to implement any of these safety changes prior to Mr. Perez's incident:

   1) Installing a camera within the ride to determine how people were hitting their heads;

   2) How better signage regarding weight and the number of adult riders would better inform riders, including rewording it or placing it in a different position to make it more compelling

(evidencing a recognition that the existing signage was inadequate and not imparting the necessary safety information to guests);

3) Putting up additional signage for safety purposes about "holding onto handles" during the ride at or near the entrance of the ride;

4) Improving the "spiel" the lifeguards/attendants were supposed to provide to guests to ensure it included a question to the guests about whether they met the maximum weight of riders (evidencing Defendants' knowledge that the existing "spiel" was inadequate and/or not being given);

5) Installing scales at top of the DBD which would light up either red or green depending on the combined weight of the riders to ensure the guests did not exceed the weight limit;

6) Reinforcing lifeguard/attendant knowledge of weight and number of adult rider restrictions.

o) On December 13, 2010, the day after Mr. Perez's incident, Defendants made another drastic change to the ride to a maximum of 2 riders (whether adults or children) and a maximum weight of 500 pounds, and changed the conveyance from a 4 person clover-leaf conveyance to a 2 person circular conveyance;

p) After Plaintiff was injured, a determination was made that the 2 rider circular conveyance/500 pound maximum was the preferable safety alternative; this determination carries with it the acknowledgement that the conveyance in use previously was not as safe, but yet the

16

Defendants chose not to implement this safer alternative until after Plaintiff got hurt;

q) Because the 2 rider circular conveyance was in use (as an available option) prior to Plaintiff's incident, Defendants knew that a safer alternative existed but did not implement it until someone was injured;

r) On December 13, 2010, the Defendants changed the signage on the DBD to read "2 RIDER'S 500 LBS. COMBINED".

39.    The aforementioned paragraphs demonstrate that Defendants had specific knowledge of the unsafe, dangerous and hazardous condition of the Double Barrel Drop waterslide, yet Defendants continued to allow guests/riders to go on the Double Barrel Drop despite safety concerns and failed to act on this knowledge.

40.    Prior to the injury-causing incident to Plaintiff on December 12, 2010, Defendants knew, had reason to know and/or should have known of the unsafe, dangerous and hazardous condition of the Double Barrel Drop and that said waterslide ride was dangerous, unsafe and hazardous to guests/riders lawfully and foreseeably getting on the Double Barrel Drop waterslide.

41.    Prior to the injury-causing incident to Plaintiff on December 12, 2010, Defendants knew, had reason to know and/or should have known that the condition of the Double Barrel Drop created a high degree of risk of physical harm to guests/riders, such as Plaintiff, including but not limited to the risk of an incident causing serious bodily injury.

42.    Despite the aforesaid knowledge by Defendants, Defendants deliberately acted to allow the unsafe, dangerous and hazardous condition to exist and persist and failed to act to correct the condition in conscious disregard or indifference to the risk the condition posed to guests/riders, such as Plaintiff, lawfully and foreseeably getting on the Double Barrel Drop waterslide.

43.    The aforementioned injuries suffered by Plaintiff were caused by the negligence, carelessness and recklessness of Defendants individually and/or through their agents, servants, workers and employees which included the following:

a.    Allowing Plaintiff to ride a waterslide when they knew, or should have known, the waterslide was dangerous and hazardous and likely to cause serious injuries;

b.    Failing to provide adequate written instructions and/or warnings related to safe operation of the Double Barrel Drop waterslide;

18

c.    Failing to provide adequate verbal/oral instructions and/or warnings related to safe operation of the Double Barrel Drop waterslide;

d.    Failing to provide adequate written instructions and/or warnings to guests and business invitees, including Plaintiff, describing how to safely ride the Double Barrel Drop waterslide;

e.    Failing to provide adequate verbal/oral instructions to guests and business invitees, including Plaintiff, describing how to safely ride the Double Barrel Drop waterslide;

f.    Failing to provide adequate written warnings related to the dangerous and hazardous nature of the Double Barrel Drop waterslide including, but not limited to, the number of riders that could safely ride the waterslide together and the maximum allowable weight limit for the raft utilized on the waterslide;

g.    Failing to provide adequate verbal/oral warnings related to the dangerous nature of the Double Barrel Drop waterslide including, but not limited to, the number of riders that could safely ride the waterslide together and the maximum allowable weight limit for the raft utilized on the waterslide;

h.    Failing to test and/or inspect the Double Barrel Drop waterslide prior to the December 12, 2010 incident to ensure the waterslide was safe for guests and business invitees, including Plaintiff;

i.    Failing to caution and/or supervise guests and business invitees, including Plaintiff, utilizing the Double Barrel Drop waterslide to ensure they were not subjected to serious injuries;

j.    Failing to hire agents, servants, workers and/or employees with the necessary skills and judgment to supervise guests and business invitees, including Plaintiff, who were utilizing the Double Barrel Drop waterslide to ensure they were not subjected to serious injury;

19

k.    Failing to implement proper policies, procedures, training, instruction and safety measures to ensure their agents, servants, workers and/or employees were properly trained in the safe operation, maintenance, use, control and supervision of the Double Barrel Drop waterslide to ensure guests and business invitees, including Plaintiff, were not subjected to serious injury;

l.    Failing to follow industry standards regarding waterslide riding requirements which subjected Plaintiff to an unnecessary and unreasonable risk of injury;

m.    Failing to follow Double Barrel Drop manufacturer-recommended safety standards and requirements related to the maintenance, control, operation, use and supervision of the Double Barrel Drop waterslide;

n.    Failing to properly train their agents, servants, workers and employees to recognize and prevent overweight riding conditions to ensure guests and business invitees, including Plaintiff, would not be subjected to serious injuries;

o.    Failing to provide adequate written and verbal/oral warnings to Plaintiff that raft separation could occur if weight limit for the raft on the Double Barrel Drop waterslide was exceeded;

p.    Failing to warn Plaintiff that raft separation could result in serious and permanent injuries;

q.    Failing to instruct and/or warn Plaintiff that exceeding the weight limit for the raft on the Double Barrel Drop waterslide could result in serious and permanent injuries;

r.    Failing to implement appropriate measures to monitor the weight and number of riders utilizing the Double Barrel Drop waterslide to ensure the maximum allowable weight and rider limit for an individual raft was not exceeded thus subjecting

20

guests and business invitees, including Plaintiff, to risk of serious and permanent injuries.

s.   Allowing too many riders at one time on the Double Barrel Drop waterslide thereby rendering the said ride unsafe and hazardous to foreseeable users/riders;

t.   Allowing too many riders at one time on the Double Barrel Drop waterslide on December 12, 2010 rendering the ride unsafe and hazardous to users/riders, including Plaintiff;

u.   Allowing the Double Barrel Drop waterslide to be unsafe and hazardous to its riders and users, including Plaintiff, on December 12, 2010 because of its having too many riders and because it was otherwise being operated with too much weight (to wit: overweight);

v.   Allowing the Double Barrel Drop waterslide to be ridden by Plaintiff and others on December 12, 2010 in an overweight, unsafe and hazardous condition;

w.   Creating a condition which was dangerous and hazardous for users/riders of the Double Barrel Drop waterslide on December 12, 2010, including Plaintiff, because of the number of riders on the ride and the weight of the riders on the ride thereby causing harm to Plaintiff;

x.   Allowing the use and operation of the Double Barrel Drop waterslide ride with more than two riders at once and with too much rider weight on December 12, 2010 thereby rendering the said ride unsafe and hazardous;

y.   Allowing their agents, servants, workers and employees who were assigned to work on and perform specific tasks with regard to the Double Barrel Drop waterslide ride on December 12, 2010 to be inadequately trained, monitored and supervised thereby leading to the allowance of excess riders and excess

weight on the subject waterslide ride thereby causing a dangerous and hazardous condition which harmed Plaintiff.

44.   As a direct and proximate result of the negligent, careless and reckless conduct of Defendants as set forth above.   Plaintiff suffered serious, permanent and disabling injuries as more fully outlined in the preceding paragraphs (said allegations being incorporated herein).

45.   At all times pertinent hereto, by virtue of the conduct outlined at length above, Defendants acted in a manner which was reckless, willful, wanton, outrageous and malicious such that it demonstrated a reckless indifference to the rights and safety of others, including Plaintiff herein.

46.   At all times pertinent hereto, Defendants knowingly created and/or allowed to be created and had reason to know of the creation of dangerous, unsafe and hazardous conditions on their premises which caused a high risk of physical harm to others legally and foreseeably on the said premises, including the Plaintiff. Nevertheless, Defendants, deliberately acted and/or failed to act in conscious disregard of and/or with reckless indifference to the aforesaid risk, thereby constituting outrageous, willful, malicious, wanton, reckless and oppressive conduct for which imposition of punitive damages is appropriate and warranted.

47.    Plaintiff alleges that the conduct of Defendants through its agents, servants, workers and employees as set forth herein, which averments are incorporated herein by reference, constitute a reckless indifference to the rights and safety of Plaintiff.

48.    Plaintiff further alleges that the consequences of the actions of Defendants, through their agents, servants, workers and employees also demonstrates outrageous, wanton and grossly reckless indifference towards the rights of others, including Plaintiff and as such, Plaintiff is entitled to an award of punitive damages.

49.    At the time of the acts and conduct of Defendants, through their agents, servants, workers and employees, said individuals were acting within the course of their employment with Defendants. The acts of these agents, servants, workers and employees of Defendants were clearly outrageous, occurred during the course of employment/agency and were committed by said individuals with the intent or plan to further the interests of Defendants.

50.    As such, Defendants are vicariously, directly or otherwise liable for the actions and inactions of their agents, servants, workers and

employees which were, as stated, outrageous, wanton, reckless and consciously indifferent to the rights and safety of others, including Plaintiff.

51.    As a consequence of the foregoing, Plaintiff, suffered serious injuries which have been described herein; Plaintiff is entitled to an award of punitive damages against Defendants directly and based on their vicarious liability for the conduct of their agents, servants, workers and employees.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants for an amount in excess of $75,000.00 for compensatory and punitive damages in addition to interest, costs, delay damages and any such other relief as this Honorable Court deems just and proper.

**COUNT II**

**JENNIFER PEREZ**

**VS.**

**GREAT WOLF LODGE OF THE POCONOS, LLC**

**AND**

**GREAT WOLF RESORTS, INC.**

52.    Plaintiffs hereby incorporate all of the preceding paragraphs as if the same were set forth at length herein.

53. As a direct and proximate result of the negligence, carelessness and recklessness of Defendants as set forth in detail above, Plaintiff Wife may/will be responsible to pay medical and related expenses for the treatment of her husband's severe injuries and medical problems.

54. As a direct and proximate result of the negligence, carelessness and recklessness of Defendants, Plaintiff Wife has lost, and will continue to lose, the society, services, companionship and consortium of Plaintiff (her husband) for which she is entitled to monetary compensation and legal damages.

**WHEREFORE**, Plaintiff Wife demands judgment in her favor and against Defendants for an amount in excess of $75,000.00 for compensatory and punitive damages, in addition to interest, costs, delay damages and any such other relief as this Honorable Court deems just and proper.

Respectfully Submitted,
LENAHAN & DEMPSEY, P.C.

By:/s/ John R. Lenahan, Jr.
John R. Lenahan, Jr., Esquire