THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN PEREZ and JENNIFER PEREZ :
:
      **Plaintiffs,** :
   v. :   3:12-CV-01322
:   (JUDGE MARIANI)
GREAT WOLF LODGE :
OF THE POCONOS LLC, and :
GREAT WOLF RESORTS, INC. :
:
      **Defendants.** :

## MEMORANDUM OPINION

### I.   INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is Plaintiffs' Motion to Preclude/Strike Use of Surveillance Discovery and/or Motion for Sanctions. (Doc. 197). For the reasons that follow, Plaintiffs' Motion will be granted in part and denied in part.[1]

### II.   FACTUAL BACKGROUND

In August 2012, Plaintiffs served Requests For Production of Documents on Defendants. (Doc. 197-1). Among Plaintiffs' requests were five categories seeking documents concerning Defendants' surveillance of the Plaintiffs. Specifically, Plaintiffs requested:

> (1)The entire investigative file(s) of defendants (or anyone on behalf of defendants) with regard to the incident involving plaintiff on December 12, 2010 exclusive of mental

---

[1] In their Brief in Opposition to Plaintiffs' Motion, (Doc. 209), Defendants ask the Court to award "fees and expenses they incurred in responding to the Motion." (Doc. 209, at 3). The Court finds Defendants' request to be wholly without merit and, accordingly, will be denied. Specifically, the Court concludes that the premise for Defendants' request—that Plaintiffs' Motion is "unfounded" and contains "personal and unfounded attacks" upon Defendants is belied by the factual record, as discussed more fully below. (Doc. 208, at 15).

impressions, conclusions or opinions regarding the value or merit of the subject claim or respecting strategy and/or tactics and privileged communications.

(5) Copies of all documents regarding or relating to any inquiries or investigation by defendants (or anyone else on behalf of defendants) into the events and circumstances regarding trauma or injuries sustained by plaintiff on December 12, 2010.

(53) All reports of any investigation made by defendants, or anyone on behalf of defendants, into the subject incident including those by any private investigators, police agency, fire department or other state and local agencies.

(55) Produce any materials whatsoever, including but not limited to written documents, guidelines, statute laws, photographs, video materials, treatises, records, transcripts, tapes, physical evidence, documentary evidence, maps, demonstrative evidence, literature, books, legal standards, etc. which defendants intend to or will show to any parties or witnesses whatsoever who will testify in these proceedings either by deposition, trial testimony or both.

(57) All photographs and/or motion pictures or summary of any and all surveillance on plaintiffs performed by anyone acting on behalf of defendants, defendants' insurance carrier and/or defense counsel.

(*Id.*). On December 11, 2012, Defendants former counsel objected to each category of

document requests, stating:

(1) Answering Defendant hereby objects to this Request in that it seeks items protected by the attorney-client privilege, work product doctrine, and/or any other applicable claim of privilege. By way of further response, and without waiver of these objections, see responsive discoverable documents produced herewith. Investigation is continuing. Answering Defendant hereby reserves the right to supplement this response up to and including the time of trial.

(5) Answering Defendant hereby objects to this Request in that it seeks items protected by the attorney-client privilege, work product doctrine, and/or any other applicable claim of privilege. By way of further response, and without waiver of these objections, any discoverable documents obtained by defense counsel herein have been or will be produced as received by counsel. Investigation is continuing. Answering Defendant hereby reserves the right to supplement this response up to and including the time of trial.

2

(53) Answering Defendant hereby objects to this Request in that it seeks items protected by the attorney-client privilege, work product doctrine, and/or any other applicable claim of privilege. Answering Defendant further objects to this Request in that it seeks the mental impressions of counsel insofar as to produce documents responsive hereto would include those involving investigation by defense counsel. By way of further response, and without waiver of these objections, see discoverable documents produced herewith. Investigation is continuing. Answering Defendant hereby reserves the right to supplement this response up to and including the time of trial.

(55) Answering Defendant hereby objects to this Request in that it seeks mental impressions of counsel. By way of further response, and without waiver of this objection, Answering Defendant has not yet made any determinations with regard to items responsive to this Request. Investigation is continuing. Answering Defendant hereby reserves the right to supplement this response up to and including the time of trial.

(57) Answering Defendant hereby objects to this Request in that it seeks items and information not discoverable at this time. Investigation is continuing. Answering Defendant reserves the right to supplement this response up to and including the time of trial.

(Doc. 16-2, at ¶¶ 1, 5, 53, 55, 57). Despite lodging objections to the Requests, and asserting various privileges, Defendants did not identify any documents withheld on a privilege log.

On June 26, 2013, after retaining new counsel, Defendants provided Plaintiffs with Supplemental Responses with respect to three categories of documents sought in the initial Request for Production:

(1) See Privilege Log of the Defendants Great Wolf Lodge of the Poconos, LLC and Great Wolf Resorts, Inc. By way of further response, please see the discoverable portions of the Colony Specialty Claim Log attached here as Exhibit 'A' . . .

3

(53) None, other than that which is already attached hereto including the December 10, 2010 and December 12, 2010 Great Wolf Reports.

(57) None.

(Doc. 197-4). Defendants did not supplement their responses to requests number 5 and 55, nor did Defendants identify any surveillance related documents withheld on a privilege log.

Two and a half years later it became apparent that Defendants were indeed conducting surveillance on Plaintiffs. Specifically, on December 18, 2015—after the conclusion of fact discovery and three months after Defendants filed a Motion for Summary Judgment—Defendants produced to Plaintiff an "undated surveillance video and CV of Patrick Colgan, Investigator" in response to Plaintiffs' Request for Production #57. (Doc. 197-3, at 2). Thereafter, on March 16, 2016, Defendants produced a partial and redacted invoice of Mr. Colgan indicating that surveillance had taken place on at least fifteen occasions between April 2013 and November 2014. (Doc. 211-6, at 2). Defendants' March 2016 Supplement Responses contained the following responses to Plaintiffs' August 2012 Request for Production:

(1) See November 22, 2014 Invoices from PBL Associates, Inc. attached. Additional Invoices will be provided upon receipt.

(5) See redacted Invoices from PBL Associates, Inc. attached. Additional Invoices will be provided upon receipt.

(53) None.

(55) Surveillance video provided.

(57) Surveillance video provided.

4

(Doc. 197-5, at 3).

After learning of the existence of surveillance discovery, Plaintiffs requested a telephone conference with the Court. The Court held a telephone conference with the parties on June 1, 2016. During that conference call, counsel for the Defendants represented to the Court and to counsel for the Plaintiffs that:

> I have no documents in my file, I have no reports from Mr. Colgan in my file. I have no – I know Rule 26 better than anybody – I have nothing in my file that forced me to convey that. Now, the interesting thing is the relationship that I have with Mr. Colgan. And Mr. Colgan was retained by me, and Mr. Colgan did this surveillance video. Everything that I have in my file from Mr. Colgan Plaintiffs' counsel has.
>
> Now, the one thing that Plaintiffs' counsel does not have is current billing for Mr. Colgan, and Mr. Colgan to his credit, spent the winter in Naples, Florida, told me, I'll get to it when I get back there.
>
> So, Your Honor, I have given Plaintiffs' counsel everything that I have from Mr. Colgan, in terms of a document, That's it.

(Doc. 197-7, at 12-13). The parties agreed to take the deposition of Mr. Colgan on June 24, 2016 (nine months after the conclusion of fact discovery).

On June 23, 2016—the day before Mr. Colgan's deposition—Defendants produced to Plaintiffs "(1) The Curriculum Vitae of Patrick Colgan; (2) Invoice #1 dated June 22, 2016 for the period of (12/5/14-5/15/15); (3) Invoice #2 dated June 22, 2016 for the period of (7/4/15-8/31/15) and (4) Invoice #3 dated June 22, 2016 for the period (9/5/15/-3/6/16)." (Doc. 211-9, at 2). Counsel for the Defendants further represented "that the only documents I have in my file for Mr. Colgan have now all been provided to you." (*Id.*). The invoices reflected that

5

Mr. Colgan had engaged in the surveillance of Plaintiffs in excess of fifty times between April 2013 and March 2016.

Mr. Colgan was deposed on June 24, 2016. (Doc. 197-11). Prior to his deposition, Plaintiffs served a subpoena on Mr. Colgan and requested that he bring certain documents with him to the deposition. (Doc. 197-15). At his deposition, Mr. Colgan failed to bring the documents Plaintiffs' counsel requested and testified that he had never seen the subpoena before. (*Id.* at 14). He further indicated that, from April 2013 going forward, he kept a "chronological recording of events" related to his surveillance on his computer. (*Id.* at 26). When asked "if someone asked you to print that out and provide it, you could have done that" Mr. Colgan responded that "I could have." (*Id.* at 29). However, counsel for the Defendants never asked Mr. Colgan whether he was in possession of any documents responsive to Plaintiffs' Requests.

On June 30, 2016, counsel for the Defendant wrote to counsel for the Plaintiffs and enclosed additional responsive documents. In that letter counsel wrote:

Dear John:

> Initially, I am compelled to state once again that all the representations I made during the conference call with Judge Mariani were entirely accurate and honest. I have subsequently learned that the football brochure that I provided to you at the deposition of Mr. Colgan was in fact erroneously contained in the correspondence section of my file. I am not perfect!
>
> At the time of Mr. Colgan's deposition, it became obvious to me that something occurred in the reproduction process of the flash drives. I therefore have asked once

6

again for the reproduction of everything contained on the flash drivers which there are four of in number.

To that end, I am enclosing a copy of the following discs, which represents each of the flash drivers copied in their entirety:

Flash Drive 1 copied to discs 1A, 1B, & 1C;
Flash Drive 2 copied to discs 2A, 2B, & 2C'
Flash Drive 3 copied to discs 3A; and
Flash Drive 4 copied to discs 4A And 5A.

(Doc. 211-12).

Thereafter Plaintiffs filed the instant Motion and the Court held oral argument on Plaintiffs' Motion on October 14, 2016. On December 21, 2016, the parties submitted supplemental briefing. (Docs. 230, 231).

### III. ANALYSIS

Federal Rule of Civil Procedure 37 permits a district court to impose sanctions upon a party for, among other things, failing to provide discovery or failing to timely supplement discovery responses. Rule 37(c) provides, in relevant part:

(1) If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at hearing, or at trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

>   (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>   (B) may inform the jury of the party's failure; and
>   (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

7

Fed. R. Civ. P. 37(c)(1)(A)-(C).[2] As a threshold matter, the Court must determine whether the Defendants failed "to provide information or identify a witness as required by Rule 26(a) or (e)." *Id.*

There can be no doubt that "[p]arties have an on-going responsibility to supplement their discovery disclosures." *Reish v. Pennsylvania State Uni.*, Civil No. 4:09-CV-1273, 2011 WL 2633090, at *2 (M.D. Pa. July 5, 2011). Indeed, Federal Rule of Civil Procedure 26(e) imposes a duty upon parties to, where necessary, timely supplement their discovery responses. Specifically, Rule 26(e) provides:

(1) A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been otherwise made known to the other parties during the discovery process or in writing; or
(B) as ordered by the Court.

---

[2] The orders listed in Rule 37(b)(2)(A)(i)-(vi) include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 26(e)(1). The primary purpose of Rule 26(e) is "correcting inaccuracies or adding information that was not available at the time of the initial report." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013).

The Court has considered the parties' arguments set forth in the briefs and at oral argument and finds that there is no doubt that the Defendants failed to timely supplement their responses to Plaintiffs' Requests for Production. Plaintiffs' Requests for Production, dated August 2012, were expansive and specifically sought documents regarding the Defendants surveillance of the Plaintiffs. For example, Request #5 sought "Copies of all documents regarding or relating to any inquiries or investigation by defendants (or anyone else on behalf of defendants) into the events and circumstances regarding trauma or injuries sustained by plaintiff on December 12, 2010." (Doc. 197-1). At the time counsel for the Defendants supplemented their initial response, in June 2013, he was no doubt aware that surveillance had been initiated two months prior but nevertheless failed to produce any surveillance related documents. Although counsel for the Defendants maintain that no such documents existed at that time, most notably, and what the Court finds most troubling, is that counsel for the Defendants did not even inquire as to whether his investigator, Mr. Colgan, possessed documents responsive to Plaintiffs' Requests. Moreover, the Court finds that the November 2014 invoice (which contained detailed information concerning the surveillance of Plaintiffs including the date, time, and location, among other things) was without question responsive to Plaintiffs' Request for Production #5. Therefore, at a

9

minimum, when Defendants came into possession of the invoice in November 2014 they had a duty to timely supplement their responses to Plaintiffs' Requests for Production. They failed to do so until March 2016—nearly a year and a half after receiving the documents responsive to Plaintiffs' Requests and six months after the conclusion of fact discovery. Accordingly, there is no question that Defendants failed "to provide information or identify a witness as required by Rule 26(a) or (e)" within the meaning of Federal Rule of Civil Procedure 37(c)(1).

### A. Defendants' Failure to Supplement Was Neither Substantially Justified Nor Harmless

Having concluded that Defendants' failed "to provide information or identify a witness as required by Rule 26(a) or (e)," the Court must next determine whether that failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants, as the party who failed to timely supplement, "ha[ve] the burden to prove 'substantial justification for its conduct or that the failure to produce was harmless.'" *McNeils v. Pennsylvania Power & Light, Susquehanna, LLC*, Civil No. 4:13-CV-02612, 2016 WL 5019199, at *28 (M.D. Pa. Mar. 23, 2016) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)). Courts in this Circuit have defined "substantial justification" as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with this disclosure request." *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 590370, at *7 (M.D. Pa. Feb. 12, 2016) (internal citation and quotation

marks omitted). "The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." *Id.* (internal citation and quotation marks omitted).

Defendants set forth a variety of arguments to justify their conduct. First, Defendants maintain they were under no obligation to disclose the surveillance discovery because Plaintiffs never filed a motion to compel. (Doc. 209, at 12). Such argument lacks merit, as there is no requirement that a party must file a motion to compel before a Court may impose sanctions under Federal Rule of Civil Procedure 37(c). Moreover, Defendants' evasive responses and failure to identify any withheld documents on a privilege log, despite raising privilege objections, gave Plaintiffs no reason to file a motion to compel.

Second, Defendants assert that when they served their June 2013 Supplemental Discovery Responses, they were not in possession of documents responsive to Plaintiffs' Requests. But there is no question that counsel for the Defendant—even if he was not technically in possession of documents responsive to Plaintiffs' requests—had a duty to contact his agent and investigator, Mr. Colgan, to determine whether he possessed any documents responsive to Plaintiffs' requests. Federal Rule of Civil Procedure 34 provides, in relevant part, that "a party may serve on any other party a request within the scope of Rule 26(b)":

> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody or control:
>
>> (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings,

11

>images, or other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>
>(B) any designated tangible things.

Fed. R. Civ. P. 34(a)(1)(A)-(B). "Control is defined as the legal right to obtain the documents required on demand." *Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988). "[A] party simply cannot claim that it does not physically possess a document as a basis for rejecting a request for production if that party has the legal right to obtain the document." *Zaloga v. Borough of Moosic*, No. 3:10-CV-2604, 2012 WL 1899665, at *2 (M.D. Pa. May 24, 2012). Accordingly, Defendants' counsel, who hired Mr. Colgan as his agent and investigator, had the legal right to obtain documents from Mr. Colgan. And thus even if counsel did not physically possess responsive documents, that is no excuse for his failure to inquire as to whether Mr. Colgan possessed any responsive documents. Moreover, as Mr. Colgan's testimony demonstrates, had Defendants' counsel so requested, he would have been able to provide various documents that would have been responsive to Plaintiffs' Requests.

Finally, Defendants maintain that the November 2014 invoice was not encompassed within Plaintiffs' Requests for Production so there was no need to turn over that document. But this argument is belied by the fact that in Defendants' March 2016 Supplemental Responses Defendants specifically identified the invoice as responsive to Plaintiffs' Request for Production #1 and #5. (Doc. 197-5, at 3). Moreover, as previously discussed, the Court

finds that Mr. Colgan's invoices were plainly encompassed within the expansive terms of Plaintiffs' Requests for Production. "[R]equests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions." Zaloga, 2012 WL 1899665, at *2 (internal citation and quotation marks omitted). In sum, after considering Defendants' arguments, the Court finds that Defendants failed to comply with their duty to supplement their discovery responses and that they failed to demonstrate substantial justification for their conduct.

Having found that the Defendants cannot meet their burden to prove that their failure to timely supplement was "substantially justified" the Court must next determine whether this failure was "harmless." Whether a failure to produce or timely supplement is "harmless" turns on whether the failure "involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Tolerico, 205 F.R.D. at 176. As an initial matter, the Court finds that Defendants' conduct—including counsel's failure to even inquire as to whether his investigator possessed any documents responsive to Plaintiffs' Requests for Production—cannot be excused as an honest mistake. The Court further finds that, given Defendants' evasive and incomplete responses, it is clear Plaintiffs lacked knowledge that the surveillance discovery existed and had not been produced. Indeed, as Plaintiffs assert, Defendants' responses to their Requests for Production actively mislead Plaintiffs into thinking that no such discovery existed.

The Third Circuit has set forth four factors that the court must consider in determining whether a failure to produce and/or timely supplement was harmless:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
> (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

With respect to the first factor, Plaintiffs' set forth a variety of arguments with respect to prejudice and surprise. First, Plaintiffs maintain that "[b]y operating stealthily, actively misleading Plaintiffs and belatedly disclosing the existence of surveillance, Defendants deprived Plaintiffs of important information they were entitled to and tilted the playing field in their favor, to Plaintiffs' disadvantage." (Doc. 204, at 23-24). Second, Plaintiffs assert that "Defendants' delay of over three years in disclosing this evidence has rendered it impossible to obtain relevant information concerning the surveillance, as it would be virtually impossible for any potential witnesses to now be able to reliably recall such events and/or for Plaintiffs to piece together what Mr. Perez was doing or feeling on a specific date three years ago." (Doc. 197, at 33-34). The Court credits the second of Plaintiffs' arguments and finds that Plaintiffs have been prejudiced in the sense that it may be extremely difficult for Plaintiffs to reconstruct events taking place many years in the past and for potential witnesses to reliably recall events taking place many years ago. *See Ware v. Rodale Press, Inc.*, 322

14

F.3d 218, 222 (3d Cir. 2003) ("[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial."). Plaintiffs have also been prejudiced in the sense that Defendants' conduct resulted in the need to spend the time and expense in filing the instant motion. See id. at 223 ("[W]e have construed prejudice to include the burden that a party must bear when forced to file motions in response to the strategic discovery tactics of an adversary."). Moreover, in the absence of Defendants' conduct, there would have been no need to extend the discovery deadlines twice in this case.

Second, the Court finds that it is possible to cure some of the prejudice to the Plaintiffs. Specifically, any prejudice to the Plaintiffs as a result of the Defendants' conduct has been somewhat lessened by Defendants' representations to the Court that Mr. Colgan will only testify to authenticate the surveillance videos—which were taken in September and October 2015—and that Mr. Colgan will not testify with respect to his personal observations of the Plaintiffs. (Doc. 209, at 17). In addition, following disclosure of the surveillance discovery, Plaintiffs have had the opportunity to depose Mr. Colgan (and Defendants offered to pay expenses in connection with his deposition). Although Defendants failed to disclose all of the video surveillance prior to Mr. Colgan's deposition, Defendants have again offered Mr. Colgan for a second deposition should Plaintiffs wish to depose him one more time. Nevertheless, the Court finds that this does not entirely cure the prejudice to Plaintiffs.

Third, with respect to whether permitting the evidence would disrupt the orderly and efficient trial of the case or other cases in the court, the Court finds that there is little likelihood that the trial will be interrupted as a result of the evidence in question. Trial in this matter is scheduled for March 2017, nearly fourth months away, and Defendants disclosed the existence of the surveillance discovery well over a year before trial.

Finally, the Court considers the bad faith or willfulness of the Defendants in failing to comply with their discovery obligation. At this stage, the Court may also consider the party's "justification for failing" to provide the requested discovery. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012). Although it is a close call, the Court finds that there is no evidence of bad faith or willfulness on the part of Defendants. Nevertheless, when considering Defendants' justification for their conduct, and, most notably, counsel for the Defendants' failure to even inquire with his investigator as to whether he possessed documents responsive to Plaintiffs' Request for Production, the Court finds that Defendants' conduct goes beyond mere negligence. And, unfortunately, Defendants' conduct is not an isolated incident. *See Perez v. Great Wolf Lodge of the Poconos*, Civil No. 3:12-CV-1322, 2015 WL 4066633 (M.D. Pa. June 15, 2015) (denying Plaintiffs' motion for sanctions). In addition, Plaintiffs have previously filed a motion to compel, on which the Court held oral argument, and the Court ordered Defendants "to turn over any email that has not been turned over at this point." (Doc. 76-8, at 22). The Court also recognized that Defendants appear "to have some difficulty complying with the Rules of Civil Procedure," (*Id.* at 33), and

due to Defendants' conduct the Court has had to twice extend the discovery deadlines in this case. In any event, although the Court cannot conclude that Defendants' conduct was willful or in bad faith, it nevertheless finds that Defendants lacked substantial justification for its conduct and that Defendants' conduct goes beyond mere negligent failure to timely supplement.

In sum, the Court finds that Defendants' failure to disclose and timely supplement its discovery responses was not substantially justified. Although there are facts that point in both directions as to whether Defendants' conduct was harmless, the Court concludes that, on balance, Defendants' conduct was not entirely harmless. As a result, the Court will impose an appropriate sanction narrowly tailored to the harm Defendants' conduct has caused Plaintiffs.

### B. The Appropriate Sanction

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat'l Coll. Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007). Here, Plaintiffs request that the "Defendants be precluded from using any surveillance video(s)/related surveillance information due to Defendants' failure to timely disclose the same during discovery." (Doc. 204, at 32).

"The exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent

17

of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal citations omitted); *accord In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999). "The Third Circuit has identified several factors for the court to consider in deciding whether to exclude evidence, including: (1) the importance of the evidence in question; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the possibility of curing the prejudice; (4) the likelihood of disruption of trial; (5) the explanation of the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence."[3] *Cmty. Ass'n Underwriters of Am., Inc. v. Rhodes Dev. Grp., Inc.*, Civil No. 1:09-CV-0257, 2013 WL 3510714, at *2 (M.D. Pa. July 11, 2013). "The importance of the evidence is often the most significant factor." *ZF Meritor*, LLC, 696 F.3d at 298.

First, the Court finds that the video surveillance to be critically important and highly relevant to this litigation. Specifically, the video surveillance conducted on Plaintiff Brian Perez is likely to prove or disprove the extent of his injuries he claims to have suffered as a result of Defendants' negligence. However, the Court concludes that testimony of Mr. Colgan's personal observations, not corroborated by video evidence, is far less critical than the video surveillance in question. Second, with respect to the prejudice or surprise to the Plaintiffs, as discussed above, the Court finds that there is a likelihood of some prejudice, particularly the difficulty Plaintiffs face in reconstructing events years in the past, which would not have been an issue had Defendants timely disclosed the existence of surveillance

---

[3] In many respects these factors overlap with the factors discussed above to determine whether a failure to disclose and/or supplement is "harmless."

18

years ago. Third, as discussed above, it is possible that any prejudice may be cured by limiting Mr. Colgan's testimony, which weighs against precluding the entirety of the surveillance evidence in question. Fourth, there is little likelihood that the trial will be interrupted as a result of the evidence in question. Trial in this matter is scheduled for March 2017—nearly four months away. Fifth, Defendants' explanation for their failure to timely supplement, as discussed above, is not credible and the Court has concluded that Defendants lacked substantial justification for their failure to timely supplement their discovery responses. Finally, although the Court finds that there is insufficient evidence that Defendants' conduct rises to the level of bad faith and willfulness, the Court nevertheless concludes that Defendants' conduct amounted to more than a mere negligent failure to disclose and timely supplement their discovery responses.

Considering all the sanctions available under Rule 37(c), the Court finds that an appropriate sanction would be requiring the Defendants to pay Plaintiffs' attorneys fees and costs incurred as a result bringing the instant motion. In addition, the Court finds that—consistent with Defendants' representations—Mr. Colgan shall be precluded from testifying with respect to his personal observations of Plaintiffs and may only testify to authenticate the video surveillance in question.[4] Plaintiffs' request to preclude Defendants from using any surveillance videos at trial will be denied.

---

[4] Defendants have represented to the Court that "Defendants will utilize the surveillance video in its case-in-chief and will call Mr. Colgan merely to authenticate the same." (Doc. 209, at 17).

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion will be granted in part and denied in part. A separate order follows.

Robert D. Mariani
United States District Judge