THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN PEREZ and JENNIFER PEREZ :
:
Plaintiffs, :
v. :     3:12-CV-01322
:     (JUDGE MARIANI)
GREAT WOLF LODGE :
OF THE POCONOS LLC, and :
GREAT WOLF RESORTS, INC. :
:
Defendants. :

## MEMORANDUM OPINION

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are two motions filed by the Defendants. In the first Motion,

Defendants ask the Court to extend the case management deadlines—which expired well

over a year ago. (Doc. 236). In the second motion, Defendants move to compel an

independent medical examination of Plaintiff Brian Perez. (Doc. 243). For the reasons that

follow, Defendants' Motions will be denied.[1]

---

[1] Defendants filed the first Motion in violation of the Court's October 18, 2012 Standard Practice Order providing that "no discovery motion shall be filed until after the disputing parties have conferred with the Court in an effort to resolve the discovery dispute. The discovery conference with the Court may be conducted by telephone at the request of any of the disputing parties." (Doc. 14) (emphasis in original). Despite Plaintiffs bringing this Order to Defendants attention, (Doc. 237), Defendants nevertheless chose to file the second Motion without conferring with the Court and again in violation of the October 18, 2012 Order. Defendants' failure to abide by the Court's Orders did not end there. In addition, the Court issued an Order providing that Defendants' Reply brief "shall be due no later than January 30, 2017." (Doc. 241). Defendants ignored this Order and filed their Reply brief the following day. (Doc. 246). Furthermore, Defendants have filed briefs in support of their Motions in Limine in violation of the Court's Order that Motions in Limine, and briefs in support, were to be due no later than February 6, 2017. (Docs. 292-308).

## II.    **FACTUAL BACKGROUND**

On July 9, 2012, Plaintiffs filed a Complaint against Defendants. (Doc. 1). Defendants'

first set of counsel, the Spector Gadon & Rosen firm, filed an Answer on July 31, 2012.

(Doc. 3). The Court thereafter issued an initial Case Management Order providing that

expert discovery was to close in July 2013. (Doc. 14). In August 2012, Plaintiffs served

expansive discovery requests on the Defendants. In response, Defendants produced just

38 pages of documents. Plaintiffs thereafter filed a Motion to Compel, (Doc. 16), and

counsel for the Defendants represented to the Court that Defendants had "produced all

discoverable documents in its possession," which, notably did not include any e-mails.

Defendants later produced an additional 5,000 pages of documents.

On March 28, 2013, Harry Coleman Esq. entered an appearance on behalf of the

Defendants, (Doc. 21), and subsequently filed a motion for extension of time to enlarge the

case management deadlines, which the Court granted on August 9, 2013. (Doc. 28). The

Order provided that expert discovery was to be completed by March 15, 2014. (Id.).

In September 2013 the Court held a hearing on Plaintiffs' Motion to Compel and ordered

the Defendants to "turn over any email that has not been turned over at this point" and

recognized that the Defendants "seem to have some difficulty complying with the Rules of

Civil Procedure." (Doc. 34, at 22, 33). Despite that admonition, Defendants withheld and

refused to produce critical e-mail statements of one of their employees until after nearly

thirty witnesses had been deposed, Plaintiffs' liability expert reports were produced, and

Defendants filed a motion for summary judgment. Defendants' conduct resulted in the Plaintiffs filing a Motion for Sanctions, (Doc. 76), and necessitated the Court re-opening discovery in order to permit Plaintiffs to re-depose various witnesses. (Docs. 136, 138). The Court referred Plaintiffs' Motion for Sanctions to Magistrate Judge Carlson who recommended that Plaintiffs' Motion should be denied. (Doc. 134). In adopting this recommendation, the Court again admonished the Defendants and noted that it "declines to express any opinion as whether some sanction may be necessary and appropriate in this case and leaves that question for another time should the issue arise." (Doc. 137).

Unfortunately, Defendants' misconduct did not end there. As extensively discussed in a memorandum opinion granting in part and denying part Plaintiffs' subsequent motion for sanctions, (Doc. 232), Defendants actively mislead Plaintiffs in certain of their supplemental discovery responses by representing that no surveillance was being conducted of the Plaintiffs. This was not true. In fact, Defendants' counsel knew that surveillance was being conducted at the time he served the supplemental discovery responses and failed to supplement the discovery response for over two-and-half years (and after Defendants had filed their second motion for summary judgment). In the memorandum opinion, this Court recognized that Defendants failed to comply with the discovery obligations, that Defendants' failure was neither substantially justified nor harmless, and that Defendants "actively mislead Plaintiffs into thinking that no such discovery existed." (*Id.* at 11-13). The Court further noted that Defendants' conduct was "not an isolated incident" and that "due to

3

Defendants' conduct the Court has had to twice extend the discovery deadlines." (*Id.* at 16-17).

Over the nearly five years that this case has been pending, the Court has extended the discovery deadlines over *seven* times. And, contrary to Defendants' representations that the majority of the extensions were due to Plaintiffs' conduct, five of the seven extensions were directly attributable to Defendants' conduct, including their repeated discovery violations. (Doc. 245-2).

On September 23, 2015, the Court issued a final revised scheduling order that explicitly provided that "No expert reports will be accepted by the Court after the close of time for submission of briefs" on Defendants' motion for summary judgment. (Doc. 142). The final brief submitted with respect to Defendants' motion was December 18, 2015. (Doc. 167). Thus, expert discovery was closed on December 18, 2015.

On July 26, 2016, the Court denied Defendants' Motion for Summary Judgment in its entirety. (Doc. 199). Thereafter, the Court entered an Order on August 12, 2016, scheduling the pre-trial conference for March 3, 2017, with trial to commence on March 13, 2017. (Doc. 207). John J. Snyder and Michael Sabo (Defendants' third set of counsel) entered appearances on November 16 and 17, 2016, (Docs. 219, 221), but abruptly withdrew their appearances the following week. (Doc. 225). Thereafter, Robert G. Devine and Michael Horner (Defendants' fourth set of counsel) entered an appearance on

4

November 22, 2016. (Docs. 222-223). Attorneys Devine and Horner entered their appearances as co-counsel with attorney Harry Coleman.

On January 17, 2017, approximately two months before trial (and with deadlines for Motions in Limine, pretrial memoranda, and other deadlines just days away) Defendants have filed the instant Motion to Extend the Case Management Deadlines. (Doc. 236). Plaintiffs oppose Defendants' Motion. Despite the Court's Order that no expert reports would be accepted after December 18, 2015, Defendants attached to their Motion five new liability and damage expert reports, which they improperly label as "rebuttal reports." The experts are in the fields of: (1) biomechanical engineering/accident reconstruction/ mechanical engineering; (2) human factors; (3) economics; (4) vocationalist; and (5) psychiatry. According to the Plaintiffs, "Defendants have had Plaintiffs' expert reports in each of these areas for years." (Doc. 245, at 10). In addition, "Defendants already have a liability expert, Wally James, who is a mechanical engineering and an amusement park expert," (*Id.*), and Defendants' biomechanical engineer expert seeks to introduce a new discipline into this case because Plaintiffs do not have a biomechanical engineering expert. (*Id.*). Plaintiffs also contend that Defendants also have a vocational expert, William Walker, whose report was produced in March 2014, and that "Defendants cannot change to a new

vocational expert because their fourth counsel coming on board has a different 'trial strategy.'"[2] (*Id.* at 11).

## III. ANALYSIS

### A. Defendants' Motion to Extend Case Management Deadlines

#### i. Federal Rule of Civil Procedure 16(b)(4)

Defendants ask this Court to extend the Case Management Deadlines, which expired over thirteen months ago. Although the parties rest their respective arguments on Federal Rule of Civil Procedure 37, both ignore that Federal Rule of Civil Procedure 16(b)(4) also applies under the circumstances. The Rule provides that a pretrial scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). "In the context of requests to extend deadlines, courts have defined good cause to include circumstances beyond the control of a party." *Courtney v. Ivanov*, Civil Action No. 3:13-227, 2016 WL 1367755, at *2 (W.D. Pa. Apr. 6, 2016) (internal citation and quotation marks omitted). "In the context of requests to reopen discovery, the decision whether to reopen discovery is committed to the sound discretion of the district court." *Id.*

In the present case, Defendants make no attempt to argue that either *they* or their prior counsel have acted diligently to comply with the Court's pretrial scheduling deadlines. Nor

---

[2] In addition, on January 24, 2017 Defendants filed a Motion to Compel a psychiatric Independent Medical Examination of Plaintiff Brian Perez. (Doc. 243).

have Defendants argued that circumstances beyond their control require extension of the discovery deadlines. Rather, the principal focus of Defendants' argument is that their new co-counsel (their fourth) "has acted diligently since entering an appearance to prepare this case for trial." (Doc. 236, at 12). The Court finds Defendants' argument to be disingenuous and wholly unavailing. As an initial matter, "[r]etaining new counsel, by itself, does not establish good cause." *Trask v. Olin Corp.*, 298 F.R.D. 244, 268 (W.D. Pa. 2014) (citations omitted). Moreover, to the extent that the Defendants appear to argue that their co-counsel Harry Coleman Esq. (who has represented the Defendants for nearly four years) erred by not retaining certain expert witnesses, it is well settled that "attorney error . . . does not constitute good cause under Rule 16(b)." *Banks v. City of Philadelphia*, 309 F.R.D. 287, 293 (E.D. Pa. 2015); *see also Lehman Bros Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (rejecting argument that the defendant "showed good cause because its counsel was unfamiliar with the case after it decided to change lawyers before trial" because "counsel's unfamiliarity with the case did not make it impossible to obtain evidence—more diligent discovery was certainly possible, albeit by previous counsel" and noting that "parties cannot avoid the consequences of the acts or omissions of [their] freely selected agent[s]") (citations omitted). Simply put, and, as discussed more fully below, the Court finds that Defendants have failed to demonstrate good cause for granting an *eighth* extension of the discovery deadlines, which expired well over a year ago.

### ii. Federal Rule of Civil Procedure 37(c)(1)

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). As a threshold matter, the Court must determine whether the Defendants failed "to provide information or identify a witness as required by Rule 26(a) or (e)." *Id.*

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. The Rule provides that a party "must make" disclosures of expert testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "The purpose of the requirement to disclose expert reports in advance of trial is to provide the opposing party with a 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony of other witnesses.'" *Trinity Indus. Inc. v. Greenlease Holding Co.*, 173 F. Supp. 3d 108, 222 (W.D. Pa. 2016) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's notes to 1993 amendment).

In the instant matter, Defendants do not seriously dispute that the submission of the five expert reports are untimely—nor could they, as the Court's scheduling order of September 23, 2015, granting in part the parties' Joint Motion for Enlargement of Case Management Deadlines, (Doc. 142), unequivocally stated that "[n]o expert reports will be accepted by the Court after the close of the time allowed for the submission of briefs," which was December

8

18, 2015. Accordingly, the Court finds that the Defendants failed "to provide information or

identify a witness as required by Rule 26(a) or (e)" within the meaning of Federal Rule of

Civil Procedure 37(c)(1).

Having concluded that Defendants failed "to provide information or identify a witness as

required by Rule 26(a) or (e)," the Court must next determine whether that failure was

"substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants, as the party

who failed to timely disclose, "ha[ve] the burden to prove 'substantial justification for its

conduct or that the failure to produce was harmless.'" *McNeils v. Pennsylvania Power &*

*Light, Susquehanna, LLC*, Civil No. 4:13-CV-02612, 2016 WL 5019199, at *28 (M.D. Pa.

Mar. 23, 2016) (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)).

Courts in this Circuit have defined "substantial justification" as "justification to a degree that

could satisfy a reasonable person that parties could differ as to whether the party was

required to comply with this disclosure request." *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-

2284, 2016 WL 590370, at *7 (M.D. Pa. Feb. 12, 2016) (internal citation and quotation

marks omitted). "The test of substantial justification is satisfied if there exists a genuine

dispute concerning compliance." *Id.* (internal citation and quotation marks omitted).

Defendants set forth a variety of arguments regarding substantial justification. However,

those arguments all center on Defendants' new co-counsel entering an appearance in this

case in November 2016 (four months after the Court denied Defendants' motion for

summary judgment and approximately four months before trial). Specifically, the entirety of

Defendants' argument (without any citation to case law) is as follows:

> Here, the justification for production of these reports on January 17, 2017 is tied directly to the undersigned involving itself in the defense on or about November 22, 2016. Once counsel entered an appearance for the Defendants, formulation of trial strategy strongly indicated that five of Plaintiffs' experts should be rebutted by witnesses in the same area of expertise. While there appears to be a difference of legal strategy between Defendants' prior counsel that withdrew and the undersigned, entry of new trial counsel should be viewed as a reasonable basis to find that production of these five experts reports is substantially justified. It should be noted Plaintiffs present human factors expert opinion and engineering opinion with separate experts. Defendant [sic] should be permitted to present expert opinion in these disciplines also. The same is true for defense offered economist and life care plan review experts. Moreover, Plaintiff claims to disabled [sic] on the independent basis of a psychiatric condition; Defendant should be permitted to offer an independent assessment from a psychiatrist it retained. In fact, Plaintiffs supplied updated psychiatric records to the Defense just two weeks ago, which strongly supports the Defense position that a psychiatrist report and evaluation should be permitted.

(Doc. 236, at 14-15).[3]

The Court finds that Defendants have not met their burden to prove that their failure to

timely identify and disclose their experts was "substantially justified" and agrees with the

Plaintiffs that "[t]here are no cases suggesting a party can circumvent Court deadlines by

hiring new co-counsel on the eve of trial who may have 'a different trial strategy,'" and that

"[a]llowing such conduct would encourage lawyer shopping and render Court deadlines

meaningless." (Doc. 245, at 14-15). Having found that Defendants' conduct was not

---

[3] Defendants misleadingly try to convey the impression to the Court that Defendants' prior counsel has withdrawn from this case. However, Harry Coleman, Esq., is still representing the Defendants in this action as co-counsel, as he has for the past four years.

10

"substantially justified" the Court must next determine whether this failure was "harmless."

Whether a failure to identify and disclose a witness within the time provided by the Court is

"harmless" turns on whether the failure "involves an honest mistake, coupled with sufficient

knowledge by the other party of the material that has not been produced." *Tolerico*, 205

F.R.D. at 176. As discussed more fully below, the Court finds that Defendants' conduct did

not involve an honest mistake, and further finds that Plaintiffs lacked any knowledge that

Defendants intended to rely on the witnesses in question until the filing of this Motion.

Indeed, it is plain as day that Defendants' last minute disclosure of five expert witnesses on

the eve of trial is not harmless, and Defendants do not seriously argue otherwise.

The Court must now consider whether Defendants' conduct warrants exclusion of the

five experts whom they failed to disclose until over a year after the discovery deadline and

on the eve of trial. The Third Circuit has set forth four factors that the court must consider in

determining whether to exclude evidence for a party's failure to comply with their discovery

obligations:

- (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
- (2) the ability of the party to cure that prejudice;
- (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
- (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). The Court must

also consider the importance of the evidence in question, *see Cmty. Ass'n Underwriters of*

11

*Am., Inc. v. Rhodes Dev. Grp., Inc.*, Civil No. 1:09-CV-0257, 2013 WL 3510714, at \*2 (M.D. Pa. July 11, 2013), which the Third Circuit has noted is "often the most significant factor." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).

With respect to the first factor, Plaintiffs set forth a variety of compelling arguments as to prejudice and surprise.[4] First, Plaintiffs maintain that, "trying to respond to Defendants' new expert reports will prevent Plaintiffs from properly preparing and responding to motions in limine due February 6, 2017, as well as preparing documents required by this Court's Trial Order due throughout February, including meetings with counsel, exhibit and witness lists, voir dire, and jury instructions." (Doc. 245, at 16). Second, Plaintiffs assert that requiring them "to assimilate and respond to five new experts will significantly disrupt Plaintiffs' counsel trial preparation which involves over 30 depositions, approximately 40 trial witnesses and 17 experts (not including the new experts)." (*Id.* at 17). Third, Plaintiffs claim that "allowing the new experts would disrupt the 'certainty as to their preparation for trial'

---

[4] Defendants, on the other hand, maintain that "[a]ny prejudice Plaintiffs may claim can be characterized more aptly as an inconvenience. Indeed, because all case management orders contemplated service of defense expert reports approximately two months prior to trial, service of these reports at this time should not be deemed overly prejudicial to Plaintiffs. Rather, this is keeping with the timing previously established in this case." (Doc. 236, at 18). The Court fails to comprehend the nature of the Defendants' argument and sees this as yet another attempt by the Defendants to disingenuously try and mislead the Court. As Plaintiffs correctly note:

> Defendants erroneously state, eight times, that prior case management orders 'set' trial to begin two months after defense expert production. (Doc. 236). The *one and only* time trial was scheduled was the August 2016 Order (Doc. 207) scheduling trial for March 13, 2017—*seven months* later. The end of expert discovery (December 2015) was *fifteen (15) months* before trial. The prior Orders stated that case would be "*appropriate* for trial" on a certain date—contemplating the Court would schedule trial **thereafter** according to the Court's calendar—which obviously would be several months later.

(Doc. 245, at 19-20) (emphasis in original).

12

which case management Orders are intended to provide." (*Id.*). Fourth, Plaintiffs argue that "allowing these experts would deprive Plaintiffs of adequate opportunity to vet these experts by gathering articles and prior testimony, and conducting a thorough background check." (*Id.* at 18). Fifth, "Plaintiffs do not have sufficient time to obtain new experts and/or have Plaintiffs' existing experts, who have other cases and commitments, prepare rebuttals." (*Id.*). Sixth, Plaintiffs note that "one of Defendants' experts is a biomechanical engineering/ accident reconstructionist—which Plaintiffs do not have." (*Id.*). Finally, Plaintiffs argue that they "would not have sufficient time to prepare motions in limine to the new experts, including *Daubert* challenges, prior to the February 6, 2017 deadline." (*Id.* at 19).

The Court finds that, without question, Plaintiffs would be prejudiced and/or surprised by having to respond to five untimely expert reports on the eve of a complex trial and in the midst of trial preparation. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003) ("[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial.") (citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988)); *see also Amaya v. York Hosp.*, Civil Action No. 1:04-CV-1081, 2005 WL 5988683, at * 1 (M.D. Pa. Dec. 28, 2005) (excluding untimely expert report and noting that "plaintiff's focus is necessarily on trial preparation, not on preparing for a new expert witness identified nearly four months after the expert deadline"). Indeed, there can be no doubt that Defendants' "desire to file expert reports on the eve of trial prejudices [Plaintiffs'] ability to prepare their case for trial and

gives [Defendants] a tactical advantage." *Klatch-Maynard v. Sugarloaf Twp.*, Civil Action No. 3:06-cv-0845, 2011 WL 2006424, at \*3 (M.D. Pa. May 23, 2011). Indeed, as the Third Circuit recognized in *In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999), a party would be prejudiced "by the admission of certain of the untimely reports insofar as the rigorous pre-trial schedule precludes them from having sufficient time to prepare to cross-examine on the late-filed reports." (*Id.*). In sum, there can be no doubt that permitting the Defendants to use the five untimely expert reports and witnesses on the eve of trial and in the face of significant pre-trial deadlines would unfairly prejudice the Plaintiffs.

Turning to the second factor, the Court finds that Plaintiffs cannot cure the significant prejudice insofar as the Court is unwilling to alter the pre-trial schedule because to do so would require postponing the trial, which has been set since August 2016. *See In re TMI Litig.*, 193 F.3d at 721 (agreeing with the district court that a party is "unable to cure the prejudice insofar as the court is unwilling to further alter the pre-trial schedule because such alteration would necessitate postponing the trial date") ; *see also Amaya*, 2005 WL 5988683, at \*1 (noting that "plaintiffs' ability to cure the prejudice would necessitate such a continuance and disrupt the court's trial schedule" and "to do so would encourage such violations on the eve of trial"). This case has been pending before the Court for nearly five years, and the Court has already granted *seven* extensions of the Case Management Deadlines. Those extensions were, for the most part, necessitated by Defendants' dilatory and sanctionable conduct, including failures to comply with Court orders and the discovery

rules. The Court is simply unwilling to further alter its schedule to accommodate Defendants' repeated failures to comply with orders of this Court and the Federal Rules of Civil Procedure. *See Roberts v. United States*, Civil Action No. 09-6212 (WJM), 2012 WL 2374656, at *5 (D.N.J. June 22, 2012) (although moving party "suggests a re-opening of discovery and re-deposing of witnesses could cure the prejudice, this ignores the fact that parties are entitled to some certainty when planning for trial").

Third, and relatedly, the Court finds that permitting the Defendants to present five new experts on the eve of trial would, without question, disrupt the orderly and efficient trial of not only this case, but of other cases in the Court. *See Klatch-Maynard*, 2011 WL 2006424, at * 4 ("Reopening discovery when trial is imminent would disrupt the orderly and efficient trial of this already protracted litigation."). If Defendants were allowed to add five new expert witnesses at this juncture the trial would no doubt be delayed. Moreover, the Court has a full trial calendar and, in all likelihood, could not accommodate a lengthy and complex trial for many months—if not longer. Simply put, this case has been set for trial since August 2016 and the Court is not willing to delay trial.

Fourth, the Court considers the bad faith or willfulness of the Defendants. Several reasons lead the Court to conclude that Defendants' failure to timely identify and disclose the experts at issue amounts to bad faith and willfulness. As an initial matter, Defendants' conduct is not an isolated incident. Rather, throughout the course of this lengthy and protracted litigation Defendants have repeatedly failed to comply with Court orders and the

15

Federal Rules of Civil Procedure.[5] *See In re TMI Litig.*, 193 F.3d at 722 (affirming district court finding of bad faith or willfulness based on the party's "repeated violation of numerous orders of [the] court, failure to seek leave of court before filing untimely reports and covert filling of additional reports as exhibits to a variety of unrelated motions"). Defendants readily admit that they were aware that the Court's expert deadlines was set for December 2015—well over a year ago—and also knew that, as of February 2014, Plaintiffs had liability and damage experts in the very same disciplines and subjects that they now seek to improperly "rebut." Defendants had ample time to produce experts within their original deadline, March 2014, and certainly by the Court's December 2015 deadline. Defendants voluntary decision to hire new co-counsel four months before trial who professes to have a different "trial strategy" than his co-counsel does not grant Defendants the right to in effect reset the clock and attempt to present a new theory of their case well over a year after the close of expert discovery.

As further evidence of bad faith and/or willfulness the Court notes that Defendants' new expert reports were not produced until over a month after a failed December 13, 2016, mediation between the parties. *See Gautier-James v. Hovensa LLC*, Civ. No. 1:06-CV-

---

[5] Unfortunately, Defendants' conduct is not an isolated incident, and Defendants have repeatedly displayed flagrant disregard for their discovery obligations and Court orders. *See Perez v. Great Wolf Lodge of the Poconos*, Civil No. 3:12-CV-1322, 2015 WL 4066633 (M.D. Pa. June 15, 2015) (denying Plaintiffs' motion for sanctions); *see also Perez v. Great Wolf Lodge of the Poconos*, No. 3:12-CV-1322, 2017 WL 34697 (M.D. Pa. Jan. 3, 2017) (granting in part and denying in part Plaintiffs' motion for sanctions). In addition, Plaintiffs have previously filed a motion to compel, on which the Court held oral argument, and the Court ordered Defendants "to turn over any email that has not been turned over at this point." (Doc. 76-8, at 22). The Court also recognized that Defendants appear "to have some difficulty complying with the Rules of Civil Procedure," (*Id.* at 33), and due to Defendants' conduct the Court has had to extend the discovery deadlines in this case multiple times.

16

00106, 2011 WL 4500153, at * 9 (D.V.I. Sept. 27, 2011) (excluding six untimely witnesses

and experts disclosed weeks after a failed mediation which "suggests an element of

gamesmanship"). Defendants' new co-counsel (who was retained approximately one month

before the mediation) undoubtedly knew that he had engaged several new experts but did

not disclose this fact to either Plaintiffs' counsel or the Court until the day he filed the instant

Motion—on January 17, 2017. See Crooks v. Nat'l Oilwell Varco, Civil Action No. 3:10-CV-

1036, 2013 WL 3481581, at *5 (M.D. Pa. June 24, 2013) (finding willful conduct where a

party's counsel failed to notify the opposing party that she had engaged new experts prior to

producing the untimely expert reports).

On balance, the Court finds that Defendants' conduct is in bad faith and demonstrates a

flagrant and willful disregard of the Court's orders. Defendants, in the span of just three

weeks, have violated five explicit orders of the Court. First, Defendants filed the Motion to

Extend Case Management Deadlines in express violation of the Court's October 18, 2012

Standard Practice Order which provides that:

> No discovery motion shall be filed under after the disputing parties have
> conferred with the Court in an effort to resolve the discovery dispute. The
> discovery conference with the Court may be conducted by telephone at the
> request of any of the disputing parties.

(Doc. 14) (emphasis in original). And even after the Plaintiffs brought this Order to the

Defendants' attention, Defendants nevertheless filed a Motion to Compel Brian Perez to

attend an Independent Medical Examination without first conferring with the Court (again in

violation of the Court's order).[6] Moreover, Defendants flagrantly disregarded the Court's September 2015 Order, which provided, in no uncertain terms, that no expert reports would be accepted after December 18, 2015. In sum, the Court finds that Defendants have acted in bad faith and demonstrated a willful and flagrant disregard of the Court's orders.[7]

Finally, the Court must consider the importance of the evidence in question. The Court finds that the five new expert reports are not critical evidence to Defendants' defense. Defendants' second set of counsel (who will be co-counsel at trial with Defendants' fourth set of counsel and has represented the Defendants for the past four years) is a competent and able attorney who, for whatever reason, determined that it was unnecessary to submit expert reports on certain subject matters within the deadlines set by this Court. Moreover,

---

[6] Defendants also violated the Court's January 20, 2017 Order providing, in relevant part, that Defendants' Reply brief was to be due no later than January 30, 2017. (Doc. 241). Defendants chose to ignore this Order and, without any explanation, filed their Reply brief the following day. Similarly, Defendants (without any explanation or without seeking leave from the Court) filed briefs in support of their Motions in Limine in violation of the Court's order that Motions in Limine, and briefs in support, were due no later than February 6, 2017. (Docs. 292-308).

[7] Courts in this Circuit have found "flagrant disregard" of Court orders where, as here, the Defendants were aware of the discovery deadlines and had a history of discovery violations which necessitated the Court extending the discovery deadlines multiple times. *See, e.g., In re TMI Litig.*, 193 F.3d at 722 (district court did not abuse its discretion in excluding eleven untimely experts where "the District Court was faced with a pattern of filings constituting a flagrant violation of pre-trial orders. The pattern was as persistent as it was unjustified."); *Black v. Allegheny Cnty.*, Civil Action No. 13-179, 2015 WL 1889503, at *5 (W.D. Pa. Apr. 24, 2015) (excluding untimely experts and finding that, even in the absence of prejudice, defendant's "conduct throughout this entire case has been so egregious that their bad faith and flagrant disregard of the Court's Orders, including missing the expert deadline, alone justifies this sanction."); *Amaya*, 2005 WL 5988683, at *2 ("The court also finds that defendants' actions involve a 'flagrant disregard of a court order' by defendants" where the defendants knew the plaintiff intended to present an economic expert at trial and had "ample time to produce their own" before the deadline); *Gibson by Gibson v. Nat'l R.R. Passenger Corp.*, 176 F.R.D. 190, 193 (E.D. Pa. 1997) ("Given that the defendants has demonstrated a conscious disregard of the discovery process and of the orders of this Court rather than a simple inability to comply with the Court orders, this court finds that preclusion of the expert witness is a proper sanction.") (internal citation and quotation marks omitted).

Defendants already have liability and damage expert reports from Wally James, a mechanical engineer, Dr. Barry Berger, an orthopedic expert, William Walker, a vocational expert, and Dr. Raymond, a neuropsychologist who interviewed and examined Plaintiff in August 2015. Defendants will simply not be left in a position where they are unable to defend themselves without the use of critical liability and damage experts, as they already have multiple liability and damage experts who have produced reports and will testify at trial.[8] Even if one could construe these reports as "critical evidence", the Court nevertheless finds that "the importance of defendants' proffered testimony does not outweigh the resulting prejudice to plaintiff." *Amaya*, 2005 WL 5988683, at *2.

The Court is aware that "[t]he exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal citations omitted); *accord In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999). Nevertheless, as discussed above, the evidence in question is not "critical" and Defendants' misconduct, gamesmanship, and flagrant disregard of the Court's orders and the Rules of Civil Procedure lead the Court to conclude that exclusion of the experts' reports and testimony is warranted under the circumstances. Accordingly, Defendants' Motion to Extend the Case Management Deadlines will be denied.

---

[8] The Court also notes that Defendants have filed various Motions in Limine seeking to exclude Plaintiffs' expert witnesses from testifying at trial. (Docs. 279, 282, 283).

## B. Defendants' Motion to Compel

Defendants have also moved to compel Plaintiff Brian Perez to appear for a psychiatric Independent Medical Examination to take place in February 2017 in New York City. (Doc. 243). In support of their motion, Defendants have failed to cite any legal authority to support their position. Nor have Defendants seriously attempted to demonstrate "good cause" to support their requests. The Court finds that Defendants' Motion is untimely and further finds that Defendants have failed to demonstrate good cause to support the need for an Independent Medical Examination on the eve of trial.[9]

It is well settled that "[m]otions to Compel filed after the discovery deadline are untimely and prohibited, absent good cause." *Carnegie Mellon Univ. v. Marvell Tech. Grp. Ltd.*, Civil Action No. 09-209, 2013 WL 772698, at *2 (W.D. Pa. Feb. 28, 2013) (citations omitted); *see also Muniz v. Price*, No. 3:10-CV-345, 2010 WL 4537037, at *2 (M.D. Pa. Nov. 3, 2010) ("[W]here a party has submitted an untimely discovery request, the court can, and in the exercise of its discretion often should, refuse to compel compliance with that request."). It is Defendants' burden to demonstrate "good cause" in support of their motion and, without any citation to legal authority or coherent argument as to why a second medical examination of

---

[9] The Court's discussion of good cause, *supra* at 6-7, and Defendants' failure to satisfy this standard is equally applicable to the Motion to Compel. The Court also notes that, as Plaintiffs cogently argue, (Doc. 247 at 22-26), Plaintiffs' production of supplemental reports and records were necessary to comply with their discovery obligations and were done with Defendants' counsel's full knowledge and consent. These updates merely confirm what Defendants have already known for years and do not provide the "good cause" necessary to subject Plaintiff to yet another medical examination.

Brian Perez is necessary, they have failed to do so. [10] *See Behne v. Halstead*, Civil No. 1:13-CV-0056, 2014 WL 4672486, at *3 (M.D. Pa. Sept. 18, 2014) ("The careful scheme of reasonable framing and enforcement of scheduling orders would be nullified if a party could simply propound discovery on the eve of trial—long after the discovery deadline has expired—without any showing of good cause."). Accordingly, the Court will deny Defendants' Motion to Compel.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions will be denied in their entirety. A separate order follows.

Robert D. Mariani
United States District Judge

---

[10] The Court notes that Defendants have already had the opportunity to have Plaintiff Brian Perez examined by Dr. Raymond, a neuropsychologist who interviewed, tested, and evaluated Plaintiff in August 2015. As Plaintiffs note:

> Defendants' attempt to obtain this belated psychiatric examination by a new expert is an improper attempt to get a second bite at the apple. Defendants' fourth counsel who recently came on-board as co-counsel, now wants a 'do over' to obtain a pre-ordained opinion of his untimely 'new' psychiatric expert, Dr. Toborowsky (who already authored an untimely report dated January 16, 2017 based upon a review of the records), because new counsel obviously does not like the opinions of the neuropsychological expert (Dr. Raymond) Defendants already chose.

(Doc. 247 at 7).